CHARLES SIEMON *v.* GEORGE D. STOUGHTON
CHARLES SIEMON *v.* WARDEN

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

548

Argued April 3—decision released July 7, 1981

*Hubert J. Santos,* for the appellant (plaintiff).

*Arnold M. Schwolsky,* assistant state's attorney, with whom, on the brief, was, *John Bailey,* state's attorney, for the appellee (defendant).

BOGDANSKI, C. J.  The plaintiff was found guilty of the crime of deviate sexual intercourse in the first degree.  On appeal, this court affirmed his conviction in *State* v. *Siemon,* 172 Conn. 19, 372 A.2d 140 (1976).  Thereafter the plaintiff moved for a new trial and also filed a writ of habeas corpus alleging ineffective assistance of counsel.  The trial court granted the motion for a new trial but denied the writ of habeas corpus.  The defendant in the

first case has appealed from the granting of the new trial and the plaintiff in the second case has appealed the denial of the writ of habeas corpus.

The facts as developed at trial are: On March 17, 1975, the victim was a sixteen-year-old girl who lived in East Hartford with her parents, two sisters and a fifteen-year-old brother. In the early evening of March 17, 1975, the victim, her brother and her ten-year-old sister were playing on property in their neighborhood. The two girls locked their brother in an unused chicken coop. Thereafter a naked man appeared and sexually assaulted the victim. Both the brother, because he was able to see through openings in the chicken coop, and the sister saw the attack. Some fifteen days later, after being seen in an automobile in front of the victim's home, the plaintiff was arrested. He claimed to have been looking for someone in that vicinity.

All three children testified at the trial. The brother testified that the assailant's hair was "brownish brown tan,"[1] he had a "big nose," "a little goatee," a mustache and curly hair. The victim described him as having a beard, wide nose, brown hair and no accent. The sister testified that he had a "funny nose" and "long, curly, wavy hair." In the courtroom all three identified the plaintiff as the assailant. The plaintiff speaks with a Spanish accent.

The plaintiff contends that the court appointed public defender provided ineffective assistance of

---

[1] This is in contrast to the police report which states that the victim and her brother described the assailant as having black hair, and the composite picture which shows him as having black hair. The memo from Detective Ventura in the state's attorney's file states, "[a]ll the children involved indicated that it was an excellent likeness."

counsel prior to and during his trial. One basis for this claim is that the trial lawyer did not investigate an incident alleged to have occurred on Silver Place in East Hartford in 1974, less than one year before the present assault. The earlier incident is described in a report made by East Hartford police officer D.S. DeBastiani on March 19, 1975. On that date Joseph Wengzn came to police headquarters wanting to know why police officers were present at his mother's home on Silver Place in East Hartford. Officer DeBastiani explained that the department was investigating a case in that area. The officer asked him if he or his family had seen anyone in the area who would fit the description of the assailant. Wengzn then told officer DeBastiani that, during the previous summer, his sister, Mrs. Fitzpatrick, came upon the property on Silver Place, and saw a nude white man with some sort of a beard approaching her elderly mother. At Fitzpatrick's exclamations the man fled the scene. In his report the officer wrote, "[i]f this is so it maybe is the same person who did assault victim in this case."

After reading the police records the state's investigator, Detective Cataldo Ventura, called Wengzn. Wengzn stated that his mother was somewhat senile and that she and his sister lived in seclusion on the property. He had indicated to his mother and sister that they should speak to the police. They took the attitude that this was not their problem. Wengzn felt that because of their attitudes and the amount of time that had lapsed, their testimony would be of no value. The investigator prepared a memorandum of his observations, which was placed in the state's attorney's file.

An investigator assigned to the public defender's office testified at the habeas proceeding. He testified

that he advised the plaintiff's lawyer that the earlier East Hartford incident was relevant to the case. His advice, however, was not taken and the public defender told him not to interview Fitzpatrick.

The public defender was aware of this information. He had access to the state's files. He did not pursue this item because of a determination that it would be of no consequence. This was based upon the report that the elderly lady was senile and that she and her daughter wished not to involve themselves. His decision was also based upon the proposition that he had a strong case notwithstanding this evidence.[2]

The first time anyone interviewed Fitzpatrick was on June 22, 1979, when the plaintiff's present counsel visited her at Silver Place in East Hartford. She testified, at the habeas hearing, that her home and property occupy approximately six and one-half acres and are surrounded by fields and woods. Fitzpatrick further testified that in the summer of 1974 she saw a white, nude male standing behind her mother in her garden on Silver Place. Thereafter she saw this same man twice on her property. On one occasion he was riding a bicycle and told her he was looking for his dog. On that occasion she testified that she did not detect a Spanish accent. Fitzpatrick described the person as being between the ages of sixteen and twenty-two and as having black hair. She was shown a number of photographs, four of which were photographs of the plaintiff. She could not identify

---

[2] Indeed, the trial court gave the jury a "Chip Smith" instruction. *State* v. *Smith*, 49 Conn. 376, 386 (1881).

any of the persons depicted in the photographs as the white, nude male she saw in the summer of 1974.

Also introduced at the habeas hearing was a composite drawing prepared by the East Hartford police based on interviews with the three children. A pencil sketch prepared by the victim's brother was also introduced. Both sketches depict the person as having a beard or goatee. The composite describes the person as having black hair. This sketch matches the description of the nude man.

In addition to claiming that his court-appointed public defender failed to investigate adequately the 1974 nude man incident, the plaintiff claims that his attorney failed to investigate adequately the victim's mental and emotional condition.

In 1975, Detective Ventura spoke to the victim's mother. The mother indicated that her daughter was a "borderline retard" but that she felt that her daughter would have no problem in testifying. She stated that the child is incapable of telling lies but could be confused if the defense attorney deliberately chose to confuse her. Detective Ventura recorded this information in his memo which was placed in the state's attorney's file. Other than a telephone call to the victim's school, the plaintiff's lawyer did not pursue this matter. He made no effort to examine her school records. He did not interview the professionals with whom she was involved and he instructed his investigator not to pursue this line of defense.

There was little reference to the victim's mental condition at the criminal trial. The victim's mother testified that her daughter was in a special education class in the East Hartford public school sys-

tem; but that her I.Q. was "close to normal"; that her daughter was incapable of fabrication; that she became confused as to measures of distance; and that she was quite good at identifying people.

At the habeas hearing the plaintiff introduced records which showed that the victim was retarded and mentally and emotionally disturbed. In 1962, at the age of four, she was evaluated at Yale-New Haven Hospital and diagnosed as suffering from "retardation of growth and retardation of psychological development of unknown etiology." In 1964 she was psychologically evaluated at Manchester Hospital and scored an estimated I.Q. of seventy-seven. Some time thereafter her mother removed her from kindergarten, claiming that her daughter suffered a nervous breakdown. Later in 1964 she had another evaluation at the Hartford Health Department and scored an I.Q. of seventy-seven on the Stanford Binet test and seventy-two on the Merril-Palmer Scale.

In 1973 she was referred for a psychological evaluation for numerous reasons including her leaving the school grounds before the school day's end and for stealing from other students. The 1973 evaluation revealed an I.Q. of seventy-four which was characterized as being in the "borderline classifications of intellectual functioning." In addition, the evaluation indicated that the following factors were present in the victim: (1) repression; (2) interference with her powers of abstraction and concentration; (3) tension and anxiety; (4) difficulty in use of analysis and synthesis of ideas to see the total picture—which would indicate maladjustments influenced by inhibitions; (5) disruptions of planning ability and of judgment; and (6) at cer-

tain points a significant distance from reality. Her sentence completion test reflected a maladjusted family situation. Another report dated May, 1975, which was before the plaintiff's trial, indicated that the victim was "difficult to contain because of unacceptable behavior i.e. lying . . . ."

The plaintiff contends that the failure to investigate the nude man information and the victim's mental and emotional background constitutes a denial of the right to effective assistance of counsel in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8 of the constitution of the state of Connecticut.

It is fundamental that a defendant in a criminal matter is guaranteed the right to the assistance of counsel. *Gideon* v. *Wainwright,* 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). The right to counsel is the right to the effective assistance of counsel. *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Reece* v. *Georgia,* 350 U.S. 85, 90, 76 S. Ct. 167, 100 L. Ed. 77 (1955); *Powell* v. *Alabama,* 287 U.S. 45, 71, 53 S. Ct. 55, 77 L. Ed. 158 (1932). " 'Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. The defendant's burden is to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction.' " *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). Constitutionally adequate assistance of counsel includes competent pretrial investigation. Id., 284. Hindsight is irrelevant. *Gentry* v. *Warden,* 167 Conn. 639,

647, 356 A.2d 902 (1975). " '[T]he issue, therefore, is not what counsel should have done to constitute the proper representation of the defendant considering the case in retrospect, but rather, whether in the circumstances, as viewed at the time, the defendant received effective assistance of counsel.' " Ibid.; *State* v. *Ralls,* 167 Conn. 408, 432, 356 A.2d 147 (1974).

Two attorneys were called by the plaintiff as expert witnesses. They both testified that a lawyer of ordinary skill and training in the criminal law would have conducted further investigation of the nude man incident and the victim's mental background. Two criminal lawyers testified on behalf of the defendant. The trial court concluded that *State* v. *Perelli,* 125 Conn. 321, 328, 5 A.2d 705 (1939), would have barred the testimony concerning the nude man incident and that therefore the plaintiff was not denied the effective assistance of counsel.

We conclude that this testimony would have been admissible. A defendant may give evidence concerning a third party's involvement with the crime, as long as there is some evidence which directly connects the third party with the crime. *State* v. *Giguere,* 184 Conn. 400, 405, 439 A.2d 1040 (1981); *State* v. *Marshall,* 166 Conn. 593, 601, 353 A.2d 756 (1974); *State* v. *Perelli,* supra; annot., 121 A.L.R. 1357, 1362. It is not, however, enough to show that another had a motive to commit the crime. *State* v. *Perelli,* supra, 328. Here, there was more than mere evidence of a motive on the part of a third party. There was testimony to show that a white, nude man with black hair, a beard and without a Spanish accent was on the scene of the crime some months earlier. The description matched the composite drawing of the assailant. Moreover, the

plaintiff does not have black hair and there was testimony that he did not have a beard on the date of the crime. The victim testified that her assailant did not have an accent. The habeas court found that the plaintiff had a Spanish accent. The unusual fact of encountering a nude man in the same area on three occasions was enough to connect the nude man to the crime with sufficient directness to render the evidence admissible.

Other jurisdictions have held that inadequate pretrial investigation is sufficient to constitute ineffective assistance of counsel. See, e.g., *Wood* v. *Zahradnick,* 578 F.2d 980 (4th Cir. 1978); *Bell* v. *Georgia,* 554 F.2d 1360 (5th Cir. 1977); *McQueen* v. *Swenson,* 498 F.2d 207 (8th Cir. 1974); *Beasley* v. *United States,* 491 F.2d 687 (6th Cir. 1974); *Gomez* v. *Beto,* 462 F.2d 596 (5th Cir. 1972); *Moore* v. *United States,* 432 F.2d 730 (3d Cir. 1970); *Goodwin* v. *Swenson,* 287 F. Sup. 166 (W.D. Mo. 1968); *Smotherman* v. *Beto,* 276 F. Sup. 579 (N.D. Tex. 1967); *People* v. *Ibarra,* 60 Cal. 2d 460, 386 P.2d 487 (1963). See generally Finer, "Ineffective Assistance of Counsel," 58 Cornell L. Rev. 1077 (1973); Gard, "Ineffective Assistance of Counsel — Standards and Remedies," 41 Mo. L. Rev. 483 (1976); Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases," 59 Nw. U.L. Rev. 289 (1964); comment, "Effective Assistance of Counsel for the Indigent Defendant," 78 Harv. L. Rev. 1434 (1965); ABA Standards, Defense Function § 4-4.1 (1980).[3]

[3] "[ABA Standards, Defense Function] Standard 4-4.1. DUTY TO INVESTIGATE. It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always

The plaintiff has shown that the assistance provided for him by counsel was ineffective. In order to obtain a new trial on the criminal charge the plaintiff must show that the lack of competency contributed to the conviction. The trial court, however, did not address that element. That element requires a showing of prejudice to the plaintiff. As suggested by Finer, "Ineffective Assistance of Counsel," 58 Cornell L. Rev. 1077, 1088 (1973), "[t]he test should be whether an adequate factual investigation would have enabled counsel to cast reasonable doubt on the government's evidence." See generally *Beasley* v. *United States,* supra; *Gomez* v. *Beto,* supra; *People* v. *Ibarra,* supra.

We conclude that prejudice to the plaintiff could well have followed from the decision not to make the investigation of the nude man incident and the victim's mental and emotional background. An adequate factual investigation may well have enabled counsel to cast reasonable doubt on the state's evidence. We do not purport to second guess trial counsel on a matter of trial tactics; failure to conduct an adequate investigation is not a matter of trial tactics. Counsel must make his decisions on an informed basis. That was not done. It is the duty of a defense attorney to investigate the relevant material in the state's attorney's file.

---

include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty."

We find this standard persuasive.

Because of the result we reach on the habeas corpus appeal, we do not decide the appeal on the motion granting a new trial. That appeal is dismissed as moot.

There is error in the denial of the writ of habeas corpus and a new trial is ordered.

In this opinion the other judges concurred.