[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner claims that he is being confined illegally because he was denied his right to the effective assistance of trial counsel as guaranteed by the Connecticut Constitution, Article I, Section 8 and the Constitution of the United States of America, Amendments VI and XIV. The specifics of the Petitioner's contentions are that counsel rendered ineffective assistance by (a) recommending that Petitioner testify in his own defense; (b) failing to adequately investigate, interview witnesses and confer with the Petitioner's first-appointed attorney;[1] (c) failing to offer the Petitioner for a polygraph examination by the State and, finally, (d) failing to object to the trial being televised on a local cable channel which polled its viewers.
James Avis was convicted of felony murder in an original trial of the case. The conviction was reversed in 1986.[2]
The reversal issued when the court found error because he was tried together with a codefendant, Daniel Vinal. He was tried anew in the fall of 1986 and convicted of felony murder. He appealed the second conviction to our Supreme Court and the conviction was affirmed.[3] His Petition for a CT Page 6277 Writ of Habeas Corpus is based upon the claimed ineffective assistance of his public defender during the second trial.
To proceed to a consideration of the substantive issues raised in a habeas corpus proceeding, the court must be satisfied that the Petitioner alleged and proved by a fair preponderance of the evidence that he did not deliberately bypass the avenue of direct appeal. "[A]ny claim invoking ineffective assistance of. . .counsel automatically satisfies the deliberate bypass requirement." Valeriano v. Bronson,209 Conn. 75, 85 (1988) as cited in Tyson v. Warden, 24 Conn. App. 729,733 (1991). Hence, the deliberate bypass rule has been satisfied.
In order for a petitioner to prevail on a claim of ineffective assistance of counsel, he must prove that his trial counsel failed to meet the two-pronged performance standard articulated in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudices the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, . . .Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . ." Id. at 687.
The first prong of the Strickland test requires inquiry into "whether counsel's assistance was reasonable considering all the circumstances" Id. at 688. Every effort must "be made to eliminate the distorting effects of hindsight. . . ." Id. at 689. Counsel's conduct must be evaluated from his or her perspective' viewed at the time of counsel's conduct." Id. at 689-90. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id., at 690.
The second prong of the Strickland test requires that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id., at 692. A defendant's affirmative burden is to show that there is a reasonable probability that, but for counsel's unprofessional CT Page 6278 errors, the result of the proceeding would have been different. Id. at 693. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.
With those criteria in mind, one of the more significant contentions of the Petitioner is that trial counsel rendered ineffective assistance by failing to avail himself of the insight and knowledge of Charles Gill who was the lawyer who first represented Avis. The testimony concerning the time spent by the two attorneys discussing the case is at odds. Gill stated that his successor, Attorney Eugene Riccio, did not spend enough time with him about the Avis matter. Riccio stated, on the other hand, that he had spent ample time with Gill. Moreover, Riccio testified that Gill's interest in his handling of the second trial became imperious; that Gill's inquiries during trial became harassing. In a nutshell, the two lawyers had different styles and different theories of defense. Their personalities clashed.
The Respondent's expert, Attorney Thomas Gerarde, testified that based upon his extensive review of the Avis file,[4] that Riccio had read and familiarized himself with the complete transcript of the first trial, that Riccio and Gill had a personality conflict, that Gill was involved only marginally in the preparation of Riccio's defense but that the two men had met and had some discussion prior to Riccio's formulating his defense strategy. In addition, he opined that Riccio had examined the charging documents, filed Bills of Particulars, several pre-trial motions including a Motion to Suppress the so-called "confession" and a Motion to Disqualify the State's Attorney and that Attorney Riccio displayed generally a thorough investigation in terms of appreciating and addressing the Petitioner's state and federal constitutional defenses. The Requests to Charge filed by Mr. Riccio, according to Gerarde, manifested a thorough knowledge of the state law and an awareness and appreciation of Avis's statutory defenses.
The Petitioner's expert witness, Howard Jacobs, was provided much less file material than Gerarde upon which to give an opinion about the range of competence of trial counsel. Many of Mr. Jacobs' responses to questions calling for his opinion about the effectiveness of Ricco's representation were qualified because rather than basing his opinion upon a full file review, he, of necessity, had to assume that the allegations of fact proffered by the petitioner were true.
The Court concludes that the petitioner failed to CT Page 6279 sustain his burden of proof on the claim that Riccio failed to avail himself adequately of Gill's knowledge and insight. Likewise, there was no evidence to indicate that had Riccio spent more time with Gill, the outcome of the trial would have been different.
The second claim of ineffective assistance is that Riccio failed to conduct an adequate investigation. It is asserted that Riccio failed to utilize the services of Avis himself. Avis was free on bond pending trial and could have assisted counsel with the defense. Petitioner also asserts that Riccio failed to spend sufficient time with Avis either to discuss the case or to otherwise prepare Avis to testify. He alleges that Riccio failed to keep several scheduled appointments. In addition, the Petitioner claims that Riccio failed to adequately and in timely fashion interview one William Gelormino, a potentially helpful witness.
Riccio was extensively examined and cross-examined during the habeas proceeding. The Court is persuaded that he was thoroughly familiar with the facts of the case, the potential witnesses, the legal issues involved and that he had developed a viable theory of defense. The court is likewise satisfied that trial counsel devoted ample time to the investigation of the matter which included talking with the Petitioner. His decision not to utilize Avis for investigative purposes was not unsound.[5] With respect to Gelormino, the Court, having observed him on the witness stand, concludes that it was in Avis's best interests not to call him as a defense witness. Moreover, the Petitioner presented no evidence to indicate that Riccio's alleged failures to adequately investigate should undermine the court's confidence in the verdict.
The claim respecting Dennis Santore and his supposed blood relationship to a Seattle restaurateur and the claim that trial counsel did not even know of a potential witness, Levi Letendre, are meritless. Levi Lentendre died on February 22, 1985, prior to the reversal of Petitioner's first conviction; he did not exist as of the date of the second trial. Dennis Santore was unaware of any relationship to a party named Santore who owned a restaurant in Seattle, Washington. Avis's claim to the contrary was unsupported by any evidence.
Riccio developed a strategy for the defense of the Petitioner: that although Avis was present at the scene of the homicide, he did not partake in the crime. He determined that the best way to have presented evidence consistent with that defense was to put the Petitioner on the stand. Riccio CT Page 6280 had a judgment call to make. He knew his client had a prior felony record and he filed a motion in limine to exclude it. That motion was granted. Unfortunately, when the Petitioner was explaining his reasons for leaving the jurisdiction shortly after the crime occurred, he testified that he had been in prison before. The trial court then allowed the State to introduce the Petitioner's prior felony record over counsel's objection. A lawyer cannot perfectly script his witness's testimony.
It was an unfortunate occurrence which allowed evidence of Avis's prior conviction to come before the jury, but that event does not constitute a showing that counsel's recommendation that his client testify fell below an objective standard of reasonableness . The decision to testify ultimately is the defendant's to make. While he may have been persuaded by his lawyer's thoughts there was no evidence elicited during the habeas proceeding to indicate that Avis was compelled to take the stand nor was there any to prove that he did not comprehend that the final decision about testifying was his.
The assertion that counsel's failure to object to the televising of the Petitioner's trials constituted ineffective assistance was unproven. The Petitioner presented no evidence that his right to a fair trial was compromised in any way by the television coverage or the polling. There was no evidence that the jurors either watched or were influenced by the coverage. In fact, the testimony of the Respondent's expert witness was that the majority of the viewers polled favored acquittal of Mr. Avis.
Any claim regarding the issue of polygraph examinations was abandoned.[6] Even if the court considered this issue it would not alter the fact that this jurisdiction excludes polygraph evidence because its accuracy is questionable. State v. Miller, 202 Conn. 463, 486 (1987).
In summary, the petitioner made many claims about trial counsel's lack of effectiveness, but he failed to prove any one within the standards enunciated in Strickland.
 Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Siemon v. Stoughton, 184 Conn. 547, 554 (1981). . .The burden of proof is upon the petitioner to show that his trial counsel's performance fell below that standard. State v. Gethers, 193 Conn. 526 (1984).
CT Page 6281
Tyson v. Warden, 24 Conn. App. 729, 737 (1991).
James Avis had a fair trial and a competent lawyer. The Constitutional guarantees were met. See Johnson v. Commissioner, 218 Conn. 403, 425 (1991). The petition is ordered dismissed.
Hon. Howard Scheinblum Superior Court Judge