[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this habeas action, the petitioner, James Ghant, seeks relief from his alleged illegal confinement in the custody of the commissioner of correction. Specifically, the petitioner seeks: 1) to have his appellate rights restored; 2) to have his sentence review rights restored; 3) to be allowed to withdraw his guilty plea and have his case restored to the regular docket for further proceedings; and 4) to receive any other relief as the law and justice may require. The petitioner's request to have his appellate rights and sentence review rights restored is granted. The following facts are relevant to the resolution of these CT Page 9059 matters.
 I.
The petitioner was arrested on June 2, 1988, and charged with murder in violation of General Statutes § 53a-54a. On July 12, 1988, following a hearing in probable cause, the court Dean, J., found probable cause for the charge of murder. On February 1, 1989, the petitioner, pursuant to a plea agreement with the state, withdrew his prior plea of not guilty and entered a plea of guilty, under the Alford doctrine, to the charge of murder in violation of § 53a-54a. The state agreed to a sentence of thirty years incarceration with the right to argue for less. On March 29, 1989, the court, Bingham, J., sentenced the petitioner to a total effective sentence of thirty years incarceration. The petitioner is presently serving that sentence in the custody of the commissioner of correction.
On April 21, 1993, the petitioner filed a writ of habeas corpus[1] which was subsequently amended on December 19, 1996,[2] and revised on July 17, 1997.[3] The petitioner claims in four counts that his confinement in the custody of the commissioner of correction is unlawful because: 1) the petitioner received ineffective assistance of trial counsel; 2) the trial court failed to advise the petitioner of his constitutional right to testify at trial, failed to inform the petitioner of the statutory elements of the charged offense, failed to conduct an adequate inquiry to ensure the petitioner's plea was knowing, intelligent and voluntary, and failed to conduct a sufficient inquiry under North Carolina v. Alford; 3) the petitioner was deprived of his statutory right to appeal and due process rights in that the trial court and the clerk did not inform the petitioner of his right to appeal the judgment, the petitioner was not aware of the right to appeal from a plea or the procedure for the right to appeal; and 4) the petitioner was deprived of his right to sentence review and due process rights in that the trial court and the clerk did not inform the petitioner of his right to sentence review, the petitioner was not informed of his right to file for sentence review, the petitioner was not aware of the procedures for sentence review.[4] On August 21, 1997, the respondent filed its return denying that the petitioner had been denied any of his rights under the state and federal constitutions and, as to each count specifically pled procedural default pursuant to Practice Book § 23-30(b).[5] A hearing on the petition was held on October 6, and October 7, 1998. The CT Page 9060 petitioner filed his post-trial memorandum of law on February 16, 1999[6] and an amended post-trial memorandum of law on April 14, 1999[7] The respondent filed its post-trial memorandum on February 11, 1999.[8]
 II.
At the probable cause hearing held on July 12, 1988, the court, Dean, J., could have reasonably found the following facts. On June 2, 1988, at approximately 3:00 a.m., the victim, James Eugene Rossi, was seated in the driver's seat of a black BMW parked on Presbrich Street in Stamford, Connecticut. Petitioner'sExhibit "C", Transcript of Probable Cause Hearing pp. 3-5, 31 (Dean, J., July 12, 1988) (hereinafter, PCH TRANSCRIPT). Standing outside of the car was another male identified by the street name "Man." At some point during that time, the petitioner approached the driver's side of the car, pointed the gun he was carrying at the victim, and pulled the trigger twice. The gun failed to fire on each occasion. The petitioner pulled the trigger a third time and the gun fired killing the victim. PCH TRANSCRIPT, pp. 5-8, 18-20. The petitioner then left the scene. The victim was discovered a short time later by the police slumped across the seat. PCH TRANSCRIPT, pp. 27-29. Drug paraphernalia was found inside the car. At approximately ten or eleven o'clock in the morning, the petitioner telephoned his cousin, John Wilson, and asked to be picked up. Wilson eventually picked up the petitioner at approximately 4:30 or 5:00 o'clock in the evening and drove him back to Wilson's home. PCH TRANSCRIPT, pp. 33-36. While in Wilson's home, the petitioner told Wilson that he was in trouble and that he thought, that he had killed someone. The petitioner also showed Wilson a gun. PCH TRANSCRIPT, p. 37-40. The petitioner and Wilson then attempted to leave Wilson's house but were stopped by the police on Wilson's front law. The two were arrested. The gun was discovered in a garbage bag that Wilson had carried out of the house. PCH TRANSCRIPT, pp. 40-42.
After the finding of probable cause by the court, the state's attorney read the long form information[9] and the petitioner entered a plea of not guilty. Trial counsel then elected a jury trial and a pretrial date was set for August 4, 1988.
At the habeas hearing the following additional facts were established. Attorney Ray Kelly filed an appearance as a special public defender on behalf of the petitioner on the day that the probable cause hearing was held. PCH TRANSCRIPT, pp. 1-2; CT Page 9061TRANSCRIPT, Hearing before the Habeas Court p. 55 (Zarella, J., October 6, 1998) (hereinafter, HABEAS TRANSCRIPT I). Kelly's criminal trial experience began with his accepting a position as an assistant public defender in 1981. He handled a large volume of serious felony cases in Bridgeport up to the time he left that position in 1985. Upon leaving the public defender's office he joined a law firm in the Stamford area and practiced in the civil and criminal litigation arena. He also accepted assignments as a special public defender in Stamford. HABEAS TRANSCRIPT I, pp. 54-55.
Subsequent to his appointment, Kelly met with the petitioner on several occasions to discuss the progress of the case. This included at least one meeting at the Whalley Avenue jail and a meeting when the petitioner took a lie detector test. HABEASTRANSCRIPT I, p. 56, 59. On those occasions between the time of the probable cause hearing and the date of entering the plea Kelly discussed with the petitioner the nature of the charges that were pending against him several times. HABEAS TRANSCRIPT I, pp. 56-57. During their meetings, the petitioner also advised Attorney Kelly that there were alibi witnesses that he should contact. Those witnesses were investigated by "Vasco," an investigator with the public defender's office. The witnesses were contacted but denied being able to account for the defendant's whereabouts. Several other witnesses named in the state's file were also contacted. HABEAS TRANSCRIPT I, pp. 57-58. The petitioner advised Attorney Kelly that on the day of the incident he had "smoked a couple of joints of reefer" and had consumed a "couple of Heinekins." HABEAS TRANSCRIPT I, p. 85. Attorney Kelly did arrange to have the petitioner submit to a private polygraph test. HABEAS TRANSCRIPT I, pp. 59-60. Kelly retained an analyst from New York who had been previously used by the public defender's office. The purpose of retaining the analyst was two-fold. If the petitioner passed the test it could be used as a potential bargaining tool with the state. Additionally, trial counsel believed that it would instill some confidence in the nineteen year old petitioner that he could withstand cross-examination. However, Mr. Kauffman, the man who administered the test, told Attorney Kelly that the petitioner "failed the test miserably." Attorney Kelly, continued, though, to speak regularly with the petitioner's mother and sister about the posture of the petitioner's case. HABEAS TRANSCRIPT I, p. 60.
Two pre-trials were held with two different judges at which time the state sought a thirty-five year sentence as a resolution CT Page 9062 short of trial. At each pre-trial the judge indicated that the court would accept a thirty year sentence with a right to argue for less. As a result of these pre-trials the state agreed to the thirty year disposition with a right to argue for less. HABEASTRANSCRIPT I, p. 61. Attorney Kelly recommended this disposition to the petitioner. The rationale for trial counsel's recommendation was that, while the petitioner continued to insist that he was not involved, "there was really no evidence to support the denial of his involvement." HABEAS TRANSCRIPT I, p. 61. The state had at least one eyewitness as well as an incriminating statement made by the petitioner to his cousin. As a result of these discussions, the petitioner advised counsel that he would accept the plea bargain. HABEAS TRANSCRIPT I, pp. 60-61. Attorney Kelly discussed with the petitioner the canvass that the court would conduct in preparation for the change of plea. It is not clear whether this discussion took place on the day the plea was entered or at sometime prior to that date. Trial counsel could not pinpoint exactly when it was that he discussed this with his client other than to state that it was within a few weeks of the change of plea[10]. HABEAS TRANSCRIPT I, p. 62. Trial counsel was certain in his testimony, and the court accepts his testimony, that he described to his client the elements of the crime charged, the penalties associated with the crime, the requirement that the plea be entered voluntarily, knowingly, and intelligently. They discussed the evidence that the state had indicating the petitioner's guilt. Trial counsel also discussed the meaning of an Alford plea as the petitioner was still maintaining that he was not the party who shot the victim. HABEASTRANSCRIPT I, pp. 62-63. On February 1, 1989, the petitioner entered a guilty plea under the Alford doctrine.
At the hearing on the change of plea the court, Bingham, J., canvassed the petitioner prior to accepting the plea and found that there was a factual basis for the plea and that it was made "knowingly, intelligently and voluntarily with a full understanding of the crimes charged, their possible penalties [and] after adequate and effective assistance of counsel."Petitioner's Exhibit "B", Transcript of Change of Plea p. 8 (Bingham, J., February 1, 1989) (hereinafter, PLEA TRANSCRIPT). Prior to the plea canvass the state's attorney placed on the record the facts supporting the charge of murder.[11] Though the court proceeded to question the petitioner directly about his plea to determine if it was made knowingly, voluntarily and intelligently; PLEA TRANSCRIPT, pp. 2-8; the court did not explain the elements of the offense to the petitioner, nor did CT Page 9063 the court ask the petitioner if his attorney had explained the elements to him. Similarly, the rendition of facts by the state's attorney could have been stronger. HABEAS TRANSCRIPT I, pp. 64-66.
After the plea was accepted, the court ordered a pre-sentence investigation and continued the matter for sentencing to March 29, 1989. From the acceptance of the plea until the date of sentencing, the petitioner did not discuss with Attorney Kelly the withdrawal of his guilty plea. However, during the early 1990's, the sister of the petitioner contacted Kelly about withdrawing the petitioner's plea. Kelly told her to contact the official court reporter, obtain a copy of the transcript and hire a lawyer. He did not pursue the matter himself nor did he suggest an attorney who would pursue the matter. HABEAS TRANSCRIPT I, pp. 67-68. Kelly also had no discussion with the petitioner, from the time the plea was entered to the present time, concerning the petitioner's right to appeal or to obtain sentence review. HABEASTRANSCRIPT I, p. 67.
The court dismisses much of the petitioner's testimony given at the habeas hearing as inconsistent, self serving, and not credible. For example the petitioner testified that he met trial counsel for the first time at the probable cause hearing and then met with him again only three or four more times before changing his plea from not guilty to guilty. HABEAS TRANSCRIPT I, pp. 20, 23.[12] Then, a few moments later, the petitioner testified that he only met Attorney Kelly one time between his probable cause hearing and his change of plea. HABEAS TRANSCRIPT I, p. 25.[13] On cross-examination, the petitioner again suggested that he might have met with Attorney Kelly three or four times after the probable cause hearing, but he couldn't be sure.[14]
Trial counsel's testimony and the billing records indicate, however, that the petitioner met with Attorney Kelly at least three times before his change of plea, not including the day of the probable cause hearing and not including the day of the change of plea.[15] The petitioner also testified that he did not know what being charged with "murder" meant and that he did not know that the crime contained the element of intent to commit murder. HABEAS TRANSCRIPT I, p. 21. Yet, after the finding of probable cause was made on July 12, the petitioner was put to plea after the long form information was read. PCH TRANSCRIPT, p. 44. This information used the term "murder" and described the nature of the crime using the word "intent."[16] The petitioner also admitted to telling trial counsel that he was in the CT Page 9064 vicinity of the murder on the early morning in question, but not a participant. HABEAS TRANSCRIPT I, p. 39. Having listened to the petitioner's testimony and observed his demeanor while testifying, this court concludes that this petitioner's testimony lacks veracity.
 III. Ineffective Assistance of Counsel Standard
In count one of his petition, the petitioner alleges that his trial counsel provided him with ineffective legal assistance. In his brief; PETITIONER'S BRIEF, pp. 13-17; the petitioner cites ten examples of counsel's ineffectiveness: 1) counsel failed to investigate the defense of intoxication; 2) counsel failed to discuss exculpatory issues with the petitioner's mother and sister; 3) counsel made no attempt to continue the probable cause hearing in order to investigate; 4) counsel failed to present witnesses on the petitioner's behalf at his sentencing; 5) counsel was not present for the petitioner's interview with adult probation and he didn't prepare the petitioner for the interview; 6) counsel did not investigate a possible plea to manslaughter; 7) counsel never explained the elements of murder to the petitioner; 8) counsel never advised the petitioner that if he went to trial he could only be convicted by a unanimous jury of twelve; 9) counsel failed to tell the petitioner that he had appellate rights; and 10) counsel failed to tell the petitioner that he had sentence review rights.
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, section 8, of the Connecticut constitution. Copas v. Commissioner, 234 Conn. 139,153, 662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied effective assistance of counsel during his criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Copas v. Commissioner, supra, 153; Bunkley v. Commissioner, 222 Conn. 444, 445,610 A.2d 598 (1992). This two-part Strickland test applies equally to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366,88 L.Ed.2d 203 (1985).
To prove that his counsel's performance was deficient, the CT Page 9065 petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v.Commissioner, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."Strickland v. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.)Strickland v. Washington, supra, 466 U.S. 690; Quintana v.Warden, 220 Conn. 1, 5, 593 A.2d 964 (1991); Williams v. Warden,217 Conn. 419, 423, 586 A.2d 582 (1991)." Jeffrey v.Commissioner, supra, 36 Conn. App. 219-20. However, it is clear that failure to investigate is not a matter of trial tactics. "Constitutionally adequate assistance of counsel includes competent pretrial investigation." Siemon v. Stoughton,184 Conn. 547, 554, 440 A.2d 210 (1981).
"In the context of guilty pleas . . . the prejudice CT Page 9066 requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. In many guilty plea cases, the `prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through trial.[17] For example, where the alleged error of counsel is failure to investigate or discover potentially exculpatory evidence, the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial. . . . As explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the idiosyncrasies of the particular decisionmaker." Hill v. Lockhart, supra,474 U.S. 58-59.
1. Counsel's Failure to Investigate the Defense of Intoxication
Although the petitioner told Attorney Kelly that he had been using alcohol and marijuana on the night of the murder; HABEASTRANSCRIPT I, p. 85;[18] Attorney Kelly testified at the habeas hearing that he did not pursue the idea of an intoxication defense with Mr. Ghant, because Mr. Ghant adamantly denied being involved in the shooting. Under those circumstances, Kelly did not believe that intoxication could be a viable defense. HABEASTRANSCRIPT I, p. 85.
The petitioner bears the burden of proving his ineffective assistance of counsel claim. He must prove that his counsel's performance was deficient and that he was prejudiced by his counsel's deficient performance. Strickland v. Washington, supra,466 U.S. 668. In the case at hand, the petitioner has failed to meet his burden. The petitioner did not produce, at the habeas hearing, any evidence that if an investigation had been done it would have uncovered information that would aid the petitioner in defending the charges. The petitioner did not produce any evidence indicating a history of drug use including, but not limited to: drug treatment records, halfway house records, police CT Page 9067 reports or medical records. All the petitioner produced were medical records generated in 1994, some five years after the crime was committed, reflecting the petitioner's unsupported claim to have been using drugs in and prior to 1988.[19] The petitioner has failed to show any prejudice by Attorney Kelly's alleged failure to further investigate an intoxication defense, and therefore petitioner's claim of ineffective assistance of counsel is rejected. Strickland v. Washington, supra,466 U.S. 668. This claim by the petitioner is more appropriately a question of whether counsel chose a reasonable trial strategy rather than a question of failure to investigate.
Furthermore, because the petitioner adamantly denied his involvement in the murder the only way in which intoxication could have been relevant to the petitioner's defense is if it was pleaded in the alternative. "Although it is true that a defendant is legally permitted to raise inconsistent defenses, when he does so a jury, applying its common sense, is entitled to view with skepticism the persuasiveness of all of the defenses." (Citations omitted.) State v. Shabazz, 246 Conn. 746, 764, 719 A.2d 440
(1998). The petitioner argues that Attorney Kelly should have pursued the following simultaneous claims at trial: (1) "I didn't do it"; and (2) "If I did do it, I was intoxicated and therefore I didn't intend to do it." However, faced with such inconsistent purported states of mind it is likely that the jury would have rejected both defenses. Id., 765; State v. Person, 236 Conn. 342,359, 673 A.2d 463 (1996) (Borden, J., concurring) ("[W]hen a defendant takes truly inconsistent positions, it will be `self penalizing I because it will invite prosecutorial argument pointing out the inconsistency, and will encourage jury skepticism about his entire defense." (Citations omitted.)); Satev. Munoz, 233 Conn. 106, 114-15 n. 5, 659 A.2d 683 (1995).
"Although the decision [to plead guilty] is ultimately made by the defendant, the defendant's attorney must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome." Copas v.Commissioner, supra, 234 Conn. 154. Attorney Kelly's recommendation that the petitioner plead guilty, rather than go to trial on the theory of two inconsistent defenses, was appropriate tactical advice. The state had strong evidence of the petitioner's involvement in the crime including the testimony of an eyewitness, the testimony of the petitioner's cousin to whom the petitioner allegedly admitted having killed someone, and a gun recovered from a diaper bag being carried by the petitioner's CT Page 9068 cousin in the petitioner's presence. On the other hand, every alibi witness identified by the petitioner denied being able to vouch for the petitioner, and the petitioner himself admitted to having been at the scene of the crime, though he denied any involvement in the murder. If he were convicted at trial the petitioner would have faced up to sixty years in prison. The state offered the petitioner thirty years with the right to argue for less if he would plead guilty. Thus, the petitioner had much to gain by pleading guilty and nothing to gain by going to trial.North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160,27 L.Ed.2d 162 (1970). Thus even if the claim of the petitioner in this habeas was failure to pursue an appropriate trial strategy by alleging alternative defenses, that claim would not succeed because counsel's advice was not deficient.
2. Counsel's Failure to discuss Exculpatory Issues with thePetitioner's Mother and Sister[20]
In his brief the petitioner alleges that Attorney Kelly failed to discuss the descriptions of the murderer with the petitioner's mother. PETITIONER'S BRIEF, pp. 13-14. This failure allegedly prejudiced the petitioner because the petitioner's mother was able to testify to the fact that the petitioner did not own the items that the suspected murderer was seen wearing. In support of his claim, the petitioner cites the habeas testimony of his mother in which she claims that he did not own the items alleged to have been worn by the murder suspect.[21]
This court need not determine if counsel's performance was deficient because the petitioner has failed to demonstrate that he suffered sufficient prejudice. Constantopolous v. Commissioner,47 Conn. App. 828, 833, 708 A.2d 588, cert. denied,244 Conn. 927, 711 A.2d 726 (1998) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland V.Washington, 466 U.S. 697). "In the guilty plea context, the prejudice requirement of Strickland is satisfied when the petitioner demonstrates that `there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' Hill v. Lockhart,474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)."Constantopolous v. Commissioner, supra, 833-34. Accordingly, the petitioner has the burden of showing that had Attorney Kelly investigated and discovered that the petitioner's mother would testify that the petitioner did not own the items of clothing the CT Page 9069 shooter was identified as wearing, Attorney Kelly would not have recommended that the petitioner plead guilty. He would not have recommended the petitioner plead guilty because he believed that "the evidence would likely have changed the outcome of the trial. . . ." Hill v. Lockhart, supra, 58-59. Given the abundance of evidence against the petitioner, it is most unlikely that Attorney Kelly would have believed that the statements of the petitioner's own mother could be sufficiently exculpatory so as to recommend that the petitioner go to trial. It is equally unlikely that the petitioner's decision to plead guilty would have been different. The petitioner's second claim of ineffective assistance of counsel is rejected.
3. Counsel's Failure to Seek a Continuance to Investigate thePetitioner's Case Before the Probable Cause Hearing
The petitioner claims that this court should find that he was prejudiced by Attorney Kelly's failure to request a continuance so that he could investigate before the probable cause hearing. Counsel does have an obligation to investigate the facts and circumstances surrounding the defendant's case. Siemon v.Stoughton, supra, 184 Conn. 547. In order to sustain this claim, however, the petitioner is required to show that had Attorney Kelly sought and been granted a continuance to investigate the case there would have been a "reasonable likelihood that he would have been able to locate and produce helpful witnesses . . . or evidence . . . within the limited time available." Jeffrey v.Commissioner, supra, 36 Conn. App. 227. The petitioner has failed to show this.
At the probable cause hearing, an eyewitness testified that he saw the petitioner raise his gun to the victim's head and pull the trigger of the gun. When the gun did not fire, he saw the petitioner attempt to fire again. When the gun did not fire the second time, he saw the petitioner attempt to fire a third time. With the third attempt, the victim was shot and killed. PCHTRANSCRIPT, pp. 5-8, 18-20. The petitioner's cousin also testified at the probable cause hearing. He told the court that the petitioner told him that he believed he had killed someone, and then the petitioner produced a gun. PCH TRANSCRIPT, pp. 33-40. The gun was subsequently recovered by the police.
At the habeas hearing, Attorney Kelly testified that he contacted a number of people named by the petitioner as potential alibi witnesses. Attorney Kelly testified that each person he CT Page 9070 contacted denied being an alibi. Furthermore, Attorney Kelly testified that he contacted a number of other witnesses named in the state's file. None of these people, he testified, were able to provide information or evidence helpful to the petitioner's case. The petitioner failed to produce any evidence to the contrary at his habeas hearing. The petitioner has failed to show prejudice pursuant to Strickland and Hill. The petitioner's third claim of ineffective assistance of counsel is rejected.
4. Counsel's Failure to Present Witnesses at the Petitioner'sSentencing Hearing; and 5. Counsel's Failure to be Present at thePetitioner's Interview with Adult Probation
The petitioner claims that he was prejudiced by Attorney Kelly's failure to produce witnesses on his behalf at his sentencing hearing and by his failure to be present during his interview with adult probation. The petitioner has failed to show sufficient prejudice to maintain these claims.
The petitioner pled guilty to murder. Murder carries with it a sentence of not less than twenty-five years nor more than sixty years in prison. General Statutes §§ 53a-35a, 53a-35b. During plea negotiations the state initially offered the petitioner thirty-five years. Following two pretrials, the state agreed to a sentence of thirty years with the right to argue for less. HABEASTRANSCRIPT I, p. 61. The petitioner agreed to the thirty years with the right to argue for less, knowing that he faced sixty years after trial. HABEAS TRANSCRIPT I, pp. 42-43.[22] The court imposed a thirty year sentence.
The petitioner has failed to identify any witnesses or produce any evidence in support of his claim that he was prejudiced by the failure of Attorney Kelly to introduce witnesses at his sentencing or to be present at his interview with adult probation. Ultimately, the petitioner received thirty years for an execution style murder. He could have received sixty. By statute, he had to be sentenced to at least twenty-five years. According to Attorney Kelly, both judges conducting the petitioner's pre-trials "indicated that after trial it was particularly — well, there was evidence that the individual that did the shooting stood over the deceased, fired the gun on one occasion and it clicked, it jammed. It took two shots, the second shot actually fired so no one was too sympathetic to Mr. Ghant in light of the fact that the gun misfired the first time and no shot was discharged and the second shot at point blank range at CT Page 9071 somebody's head so — they said that after trial he would be looking at something much more severe than, you know, the thirty-five recommended by the state." Under these circumstances the court fails to see any prejudice to the petitioner. The petitioner's fourth and fifth claims are rejected.
6. Counsel's Failure to Investigate a Plea to Manslaughter
The petitioner's claim that Attorney Kelly failed to investigate a manslaughter plea is contradicted by the record. According to the petitioner's own testimony at the habeas hearing, when Attorney Kelly was asked about a possible plea to manslaughter Attorney Kelly responded that the state was not looking at a manslaughter plea, only murder. HABEAS TRANSCRIPT I, p. 28.[23] Similarly, when asked if he had ever discussed a plea of manslaughter with the petitioner, Attorney Kelly responded, "That we would love one, yes. Was there any viable basis for it, no." HABEAS TRANSCRIPT I, p. 85. Attorney Kelly, also testified that in an effort to broker a different plea he had had the petitioner take a lie detector test. Kelly had believed that "if [the petitioner] passed the polygraph" he could possibly "negotiat[e] a lesser plea. . . ." HABEAS TRANSCRIPT I, p. 59. Unfortunately for the petitioner, he failed the test.
It was the petitioner's burden to prove that counsel's performance was deficient and that counsel's deficient performance prejudiced him. Strickland v. Washington, supra,466 U.S. 687; Bunkley v. Commissioner, supra, 222 Conn. 445. By his own testimony, the petitioner admits that Attorney Kelly investigated a plea to manslaughter, but it was the state that would not agree to a lesser plea. The petitioner's sixth claim of ineffective assistance of counsel is rejected.
7. Counsel's Failure to Explain to the Petitioner All of theElements Making Up the Charge of Murder
The petitioner has alleged that Attorney Kelly never explained the elements of murder to him, and that if he had known that murder was a specific intent crime he never would have pled guilty. HABEAS TRANSCRIPT I, pp. 26-30; PETITIONER'S BRIEF, pp. 15-16. According to the petitioner he would never had pled guilty to a specific intent crime because he would not admit to having intentionally committed a crime that he did not commit. HABEASTRANSCRIPT I, p. 29. CT Page 9072
Attorney Kelly testified at the habeas hearing that he did in fact discuss the elements of murder with the petitioner. HABEASTRANSCRIPT I, p. 62.[24] However, even if the court were to find that Attorney Kelly did not fully review the elements of murder with the petitioner, which it does not, the court finds that the petitioner has failed to show that had the elements been explained to him he would not have pled guilty and would have insisted on going to trial. Constantopolous v. Commissioner, supra, 47 Conn. App. 833-34, citing Hill v. Lockhart, supra,474 U.S. 59. As discussed numerous times throughout this decision, the evidence amassed against the petitioner was significant. The state had eyewitnesses, ear witnesses and the gun. The petitioner on the other hand had no defense. He insisted he had not committed the crime, but admitted to being in the vicinity of the crime on the night in question. He could offer no alibi, no explanation for why his cousin would have implicated him in the shooting and no evidence attacking the state's case. He had been informed by the two judges pre-trying the case that if he lost at trial he was facing much more than the thirty-five years the state was offering in plea negotiations. He was nineteen when the crime was committed and he faced a minimum of twenty-five years and a maximum of sixty years in prison. He was eventually offered thirty years with the right to argue for less. That deal would allow him to seek the minimum possible sentence before the sentencing court. None of these facts would have changed if the petitioner had known that murder was a specific intent crime.
It is not likely that the petitioner would have withdrawn his guilty plea and insisted on going to trial just because he had been advised that the charge of murder included the element of specific intent to commit murder. Though, this court accepts Attorney's Kelly's testimony that he advised the petitioner of the elements of murder, the court also finds that had he not, the petitioner would not have been prejudiced under theStrickland-Hill standard.
8. Counsel's Failure to Inform the Petitioner that if He Went toTrial He Could Only be Convicted by a Unanimous Jury.
The petitioner claims that Attorney Kelly never informed him that he if he went to trial he would be tried by a jury of twelve members of the community who would have to agree unanimously that he was guilty of the crime charged. While, the petitioner has also acknowledged that our Supreme Court does not require that a defendant be so advised in order to knowingly, voluntarily and CT Page 9073 intelligently waive his or her right to trial by jury; State v.Tangari, 44 Conn. App. 187, 193-94, 688 A.2d 1335, cert. denied,241 Conn. 901, 693 A.2d 304, cert. denied, ___ U.S. ___,118 S.Ct. 177, 139 L.Ed.2d 118 (1997); State v. Henton,50 Conn. App. 521, 527-29, 720 A.2d 517 (1998); State v. Chapman,46 Conn. App. 24, 28-31, 698 A.2d 347, cert. denied, 243 Conn. 947,704 A.2d 800 (1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1393,140 L.Ed.2d 652 (1998); the petitioner claims that the Supreme Court's position is wrong.[25] Though the petitioner may disagree with existing Supreme Court case law, the law is binding on this court. Pursuant to Tangari, Henton, and Chapman, this court finds that counsel was not ineffective in failing to advise the petitioner that if he went to trial he would have to be convicted by a jury of twelve members of the community. Thus, the petitioner's eighth claim of ineffective assistance of counsel is rejected.
9. Counsel's Failure to Inform the Petitioner that He HadAppellate Rights; 10. Counsel's Failure to Inform the Petitionerthat He Had Sentence Review Rights.
There are a few instances in which the standard Strickland orStrickland-Hill prejudice inquiry will not apply. The Connecticut Supreme Court has recognized, albeit in dicta, that "where the prejudice claimed by a habeas petitioner is that he was deprived of his entire appeal because his appellate counsel failed to file papers timely . . . the remedy sought by the petitioner would not be a new trial, but a first appeal as of right, and it would be impossible to determine whether the verdict was reliable until the appeal had been heard. In such a case, therefore, prejudicewould be established by the absence of his appeal." (Emphasis added.). Bunkley v. Commissioner, supra, 222 Conn. 465; see alsoIovieno v. Commissioner, 242 Conn. 689, 699 A.2d 1003 (1997).
The petitioner claims that he was prejudiced by his trial counsel's deficient performance in failing to inform him that he had appellate rights. PETITION, ¶¶ 15, 16;[26] see alsoPETITIONER'S BRIEF, pp. 16-17, 21-22. A review of the petitioner's sentencing hearing reveals that the petitioner was not advised by the court of his right to appeal his guilty plea. See PLEA TRANSCRIPT, pp. 1-9. Moreover, Attorney Kelly, testified at the habeas hearing that not only did he not tell Mr. Ghant that he could appeal from his guilty plea, but that he did not even know that Mr. Ghant could have appealed from his guilty CT Page 9074 plea. HABEAS TRANSCRIPT I, pp. 66-67.[27] Because the court never informed the petitioner at his sentencing that he had the right to appeal, it was counsel's obligation, as a reasonably competent defense attorney, to make sure the petitioner was fully informed of his rights. Because counsel failed to do so, the petition was unable to take advantage of his rights and file a timely appeal. See Bunkley v. Commissioner, supra,222 Conn. 465.[28] Thus, counsel's deficiencies prejudiced the petitioner by depriving him of his entire right to appeal. The petitioner has met his burden of establishing that he was prejudiced by counsel's deficient performance. See e.g. Bunkley v.Commissioner, supra, 465, n. 16, cited in Iovieno v. Commissioner, supra, 704-707.
Trial counsel also rendered ineffective assistance when he failed to inform the petitioner that he was entitled to sentence review. PETITION, ¶ 14;[29] see also PETITIONER'S BRIEF, pp. 16-17, 21-22. The respondent argues that Attorney Kelly's failure to inform the petitioner about his sentence review rights cannot be. deemed to have been deficient because "the petitioner's eligibility for sentence review was unsettled at the time of his 1989 sentencing." RESPONDENT'S POST-TRIAL BRIEF, p. 9.[30] The court cannot accept the respondent's claim. In 1966, our Supreme Court ruled that because the sentencing process was a critical stage of the criminal trial, an indigent criminal defendant was entitled to appointed counsel at sentence review. See Consigliov. Warden, 153 Conn. 673, 676, 220 A.2d 269 (1966) ("[t]he entire sentence review procedure is sufficiently a part of the original trial so that representation in sentence review proceedings, including any resentencing made necessary by the action of the review division, falls within the duty assumed by the attorney of record who represented the accused at the trial and the original sentencing."). That sentiment was echoed in Practice Book (Rev. 1963) § 2348 [formerly § 937, now § 43-23] which stated, "It is the responsibility of the counsel of record at the time of sentencing to represent the defendant at the hearing before the sentence review division of the superior court, unless, for exceptional reasons, he is excused by the division." This right to counsel at sentence review would have been meaningless if counsel could have avoided his responsibility by not telling his client that he was or might have been entitled to sentence review. Part and parcel of a right to counsel at sentence review includes "representation of a criminal defendant in regard towhether to pursue this avenue and preparation for the hearing itself. . . ." Lovejoy v. Warden, Superior Court, judicial CT Page 9075 district of Tolland at Rockville, Docket No. 1967 (Bishop, J., February 18, 1997). Moreover, General Statutes § 51-195, Practice Book § 2348, and the obligation to zealously protect and preserve his clients' rights required a reasonably competent criminal defense attorney with ordinary skill and training to pursue sentence review. This is true even if the law on sentence review of plea agreements with a "right to argue for less" had not been ultimately decided by the Supreme Court. Finally, counsel's assessment that the petitioner had done well at the initial sentencing in light of his exposure to a substantially longer period of incarceration that could have been imposed, even if founded, is no justification for a failure to conduct a meaningful discussion with one's client to enable the client to make an informed decision of whether to pursue sentence review." (Emphasis added.) Lovejoy v. Warden, supra, Docket No. 1967.
 CONCLUSION
General Statutes § 52-470 (a) empowers the habeas court to dispose of cases "as law and justice require." A habeas court must fashion a remedy appropriate to the constitutional right it seeks to vindicate. A restoration of the petitioner's right to appeal and right to apply for sentence review provides an appropriate remedy for the petitioner in the circumstances of this case.
For all of the aforementioned reasons, the petitioner's request for restoration of his appellate rights and sentence review rights is granted as of the date of the filing of this decision.
By the Court,
Zarella, J.