[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Joe Edward Singletary, has moved this court to grant his petition for habeas corpus dated December 16, 1996.[1] In his petition, the petitioner claims that he received ineffective assistance of counsel from his trial attorney Raymond Ganim. The petitioner seeks in the way of relief: "a) That the judgment in docket no. 32,860 be vacated; b) CT Page 11610 That the petitioner's case be remanded to the Superior Court, Judicial District of Fairfield at Bridgeport and returned to the regular docket; c) That the petitioner be granted a new trial; d) That if the above orders are granted that the Petitioner be released from custody in 10 days if the Respondent does not comply with this court's order; and e) Any other relief that law, justice and equity requires." PETITION, p. 3. The petitioner's request for a writ of habeas corpus is denied.[2] The following facts are relevant to the resolution of these matters.
 I.
The petitioner was arrested on July 15, 1987, and charged with murder in violation of General Statutes § 53a-54a(a), for the shooting death of Deno Ingram. On September 3, 1987, following a hearing in probable cause, the court Curran, J., found probable cause for the charge of murder. On April 28, 1988, the petitioner, pursuant to a plea agreement with the state, withdrew his prior plea of not guilty and entered a plea of guilty, under the Alford Doctrine, to the charge of murder in violation of § 53a-54a. The petitioner was canvassed by the court, Ford, J., and his plea was accepted. The plea agreement called for twenty-five years incarceration in return for the petitioner's guilty plea to murder. On June 10, 1988, the court,Curran, J., sentenced the petitioner to a total effective sentence of twenty-five years incarceration. At all relevant times, the petitioner was represented by attorney Raymond Ganim.[3] The petitioner is presently serving his sentence in the custody of the commissioner of correction.
At the petitioner's change of plea hearing on April 28, 1988, the court, Ford, J., found that the following facts, presented by the state, were sufficient to establish a factual basis for the petitioner's plea of guilty, pursuant to Alford, to the charge of murder.
 On July 14, 1987 . . . at Columbia and Gregory Street, a person by the name of Deno Ingram apparently was out there with some friends on the street when a car pulled up. The car — another person on the street spoke to the people who were in the car and it was described as a driver and two other young boys. CT Page 11611
 The person that they originally talked to then pointed over at Mr. Deno Ingram and Mr. Ingram went over to the car.
 At that point there was a gunshot as he approached the car, after a few moments. Mr. Ingram ran towards his house, collapsed from a bullet wound through his chest, which later caused his death.
 Several people on the street knew the car, as well as a person who originally had approached the car knew the driver, Mr. Singletary. And it was learned that he was, in fact, the person who was responsible.
 The police later interviewed two of the — two individuals who were in the car with Mr. Singletary and they reported that they had gone down there to speak to, apparently to buy marijuana was the intent that they expressed or to get it through whatever means they were going to get it. And they went down. The first person they saw they asked for the marijuana and he directed them to the victim Mr. Ingram.
 And after Mr. Singletary was arrested, he told the police that when he got down there, he saw Mr. Ingram and recognized him to be a person who was responsible for a beating that he had sustained some time in the past. And then he shot him at that point. And that was the reason he shot him.
 The gun had apparently — There was also evidence that some person had lent Mr. Singletary the gun previously that evening. A witness said that he had given it to Mr. Singletary to hold. It was a single shot, sawed-off type .22-caliber rifle.
 And Mr. Singletary said in his statement that when he saw Mr. Ingram he shot him, but he did not intend, in fact, to kill him. CT Page 11612
 One of the individuals that was in the car, whatever indicated that after the victim was stricken that he noted that Mr. Singletary attempted to reload another cartridge into the — into the gun, but was convinced that they should leave the area as soon as possible.
 So, there is no sworn statement in there . . . but there is a verbal statement from the — that he gave to the police concerning his acts and his intent on the 14th of July, and the State would seek to introduce that as evidence also.
PETITIONER'S EXHIBIT "2", Plea Transcript pp. 21-23 (Ford, J., April 28, 1988). The petitioner offered a somewhat different account of the events in question, but did admit to shooting the victim.[4] The petitioner continued to maintain, however, that he had not intended to kill the victim.
After the state read its rendition of the facts into the record, the court then canvassed the petitioner on his decision to enter an Alford Plea to the charge of Murder. The petitioner acknowledged that he was accepting the state's offer to plead guilty and receive twenty-five years because he felt it was a favorable offer and he wanted to avoid exposing himself to more time. PETITIONER'S EXHIBIT "2", p. 31-32. The petitioner further acknowledged that no one had pressured him into accepting the plea agreement and that he had discussed the plea thoroughly with his attorney and his father.[5] Id., 32. The petitioner also acknowledged that in pleading guilty under Alford that he was not admitting to some of the factual claims being made by the state; in particular, the petitioner's "main bone of contention" was that he did not intend to kill the victim but the state was claiming that he did. Id., 33. When the court explained that the state could claim that the petitioner's intent was evident by his use of a deadly weapon, and the resulting death of the victim, the petitioner stated that he understood. Id., 33-34. The petitioner then acknowledged that he was pleading guilty because he had in fact shot and killed the victim, though he hadn't intended to, and that he had "to do some time for it." Id., 35. He felt that the time agreed to was a reasonable time to serve. Id., 36. The court then found that the petitioner's plea was voluntarily made with the assistance of competent counsel and CT Page 11613 that there was a factual basis for the plea.
 II.
The petitioner now claims "that his conviction and incarceration are illegal because they were obtained in violation of his state and federal constitutional rights to due process and the effective assistance of counsel under Article I, Section 8 of the Connecticut Constitution and Amendments VI and XIV of the U.S. Constitution in that: a) His attorney failed to adequately advise the Petitioner of the availability of manslaughter as a lesser included offense to the crime of murder at trial; and b) The Petitioner's plea to murder was involuntary because he was under the mistaken belief that because he was charged with murder, the jury could only return a verdict of guilty for murder and not to a lesser included offense." PETITION, p. 2. Specifically, the petitioner claims that had it not been for Attorney Ganim's failure to inform the petitioner about the availability of manslaughter as a lesser included offense to murder at trial, "the outcome of the proceedings would have been different as the Petitioner would not have pleaded guilty and gone to trial." Id. This court rejects the petitioner's claim because he has failed to establish that he suffered sufficient prejudice as a result of his counsel's deficient performance.
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, section 8, of the Connecticut constitution. Copas v. Commissioner, 234 Conn. 139,153, 662 A.2d 718 (1995). In order for the petitioner to succeed in his claim that he was denied effective assistance of counsel during his criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Copas v. Commissioner, supra, 153; Bunkley v. Commissioner, 222 Conn. 444, 445, 610 A.2d 598
(1992). This two-part Strickland test applies equally to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366,88 L.Ed.2d 203 (1985).
To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v.CT Page 11614Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). Competent representation is not representation with no error. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.) Johnson v.Commissioner, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995)
In Strickland, the Supreme Court opined: "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."Strickland v. Washington, supra, 466 U.S. 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.)Strickland v. Washington, supra, 466 U.S. 690; Quintana v.Warden, 220 Conn. 1, 5, 593 A.2d 964 (1991); Williams v. Warden,217 Conn. 419, 423, 586 A.2d 582 (1991)." Jeffrey v.Commissioner, supra, 36 Conn. App. 219-20. However, it is clear that failure to investigate is not a matter of trial tactics. "Constitutionally adequate assistance of counsel includes competent pretrial investigation." Siemon v. Stoughton,184 Conn. 547, 554, 440 A.2d 210 (1981).
"In the context of guilty pleas . . . the prejudice requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. CT Page 11615 In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. In many guilty plea cases, the `prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through trial.[6] For example, where the alleged error of counsel is failure to investigate or discover potentially exculpatory evidence, the determination whether the error `prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial . . . As explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the `idiosyncrasies of the particular decisionmaker.'" Hill v.Lockhart, supra, 474 U.S. 58-59.
 A.
Although this court could immediately dispose of the petitioner's ineffective assistance of counsel claim on the ground that the petitioner has failed to prove that he suffered sufficient prejudice; Constantopolous v. Commissioner,47 Conn. App. 828, 833, 708 A.2d 588, cert. denied, 244 Conn. 927,711 A.2d 726 (1998) ("`If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed'" Strickland v.Washington, 466 U.S. 697); this court will not do so. Instead this court chooses to review both the deficient performance prong and the prejudice prong of the Strickland test because of the serious concerns this court has over the representation afforded the petitioner by Attorney Ganim. In this case, Attorney Ganim testified at the habeas hearing that: 1) he did not discuss the elements of murder with the petitioner;[7] HABEAS HEARING, pp. 22, 36-37, 42, 56-57; 2) he did not discuss the elements of manslaughter with the petitioner;[8] HABEAS TRANSCRIPT, pp. 22, 36-37, 42, 56-57; 3) he did not interview any of the eyewitnesses to the shooting;[9] HABEAS TRANSCRIPT, p. 23; 4) he did not interview anyone regarding the petitioner's state of mind on the night in question;[10] HABEAS TRANSCRIPT, pp. 26-27; 5) he did not review the state's evidence with the petitioner;[11] HABEASCT Page 11616TRANSCRIPT, pp. 36-38; 6) he did not review what the petitioner's defense could have been had he chosen to go to trial;[12]HABEAS TRANSCRIPT, p. 38; and 7) he did not explain to the petitioner that if he went to trial, the jury could consider whether or not he was guilty of manslaughter;[13] HABEASTRANSCRIPT, pp. 42, 61.[14]
Attorney Ganim's failure to discuss these matters with the petitioner was not reasonable and cannot be said to fall within the "range of competence displayed by lawyers with ordinary training and skill in the criminal law." Johnson v. Commissioner,
supra, 36 Conn. App. 703. Attorney Ganim had a client who was charged with murder, admitted to having shot and killed the victim, yet was unwavering in his denial that he had the requisite intent to commit murder. Attorney Ganim had a duty to help the petitioner make and informed decision as to whether or not to plead guilty and to what charge he should plead guilty.Copas v. Commissioner, supra, 234 Conn. 154. Because intent is "often the most significant, and at the same time, the most elusive element of the crime charged; State v. Sivri,231 Conn. 115, 138, 646 A.2d 169 (1994); the petitioner could not have made an informed choice to plead guilty to murder without knowing that "the critical element distinguishing murder from its lesser included offenses is intent. . . ." State v. Ramos,36 Conn. App. 831, 834, 661 A.2d 606, cert. denied, 235 Conn. 902, 665 A.2d 905
(1995).
Similarly, Attorney Ganim's failure to question any of the witnesses in the case was not reasonable nor does it fall within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. Siemon v. Stoughton,
supra, 184 Conn. 554 ("Constitutionally adequate assistance of counsel includes competent pretrial investigation."). There was at least one eyewitness to the events that took place in the car just prior to the shooting and the shooting itself. Any reasonably competent attorney would have at least attempted to contact the witness if not interview him. Such efforts are particularly important when there are multiple versions of a story as there were in this case. A decision to plead guilty does not absolve an attorney from conducting a pre-trial investigation because an attorney who has not investigated cannot bargain with the state from a position of knowledge. Attorney Ganim's own habeas testimony reveals that he rendered deficient representation to the petitioner. CT Page 11617
In a habeas corpus proceeding, however, the burden of establishing grounds for relief rest with the petitioner. Biggsv. Warden, 26 Conn. App. 52, 55, 597 A.2d 839, cert. denied,221 Conn. 902, 600 A.2d 1029 (1991). In order to succeed in his claim that he was denied effective assistance of counsel, the petitioner has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, supra, 466 U.S. 687; Hill v. Lockhart, supra,474 U.S. 58; Copas v. Commissioner, supra, 234 Conn. 153. While the petitioner has no difficulty establishing that Attorney Ganim's performance was deficient, he fails to satisfy his burden of proving that he was prejudiced by Attorney Ganim's performance.
 B.
In order to prove that he was prejudiced, the petitioner must show that Attorney Ganim's deficient performance affected the outcome of his plea process. Hill v. Lockhart, supra,474 U.S. 58. However, the petitioner must do more than allege that he would have gone to trial. The petitioner must show that but for Attorney Ganim's errors, he would not have pled guilty, but would have instead insisted on going to trial. Id., 58-59. As part of this showing, the petitioner must show that his decision to plead not guilty and go to trial would have been based upon the likelihood that his defense would have succeeded at trial. Copasv. Commissioner, supra, 234 Conn. 156. Specifically, the petitioner must show that had Attorney Ganim adequately explained the option of manslaughter as a lesser included offense at trial, he would have pled not guilty and gone to trial because a jury would have been likely to find that he lacked the requisite intent to commit murder and therefore had committed manslaughter. Having reviewed the evidence presented at the habeas hearing —PETITIONER'S EXHIBITS 1-10 (the court record, the plea transcript, the state's disclosure, police autopsy reports, Detectives Biroscak's and Krusinski's reports, Detectives Golas' and Johnson's reports) and the Habeas Transcript — this court concludes that it would have been very unlikely for any jury to have found that the petitioner lacked the requisite intent to commit murder. The court also concludes that such a realization was not lost on the petitioner. When the petitioner agreed to pled guilty pursuant to the Alford doctrine, he did so stating that he believed the agreed upon sentence was a favorable one and was accepting it in order to limit the court's ability to CT Page 11618 sentence him more severely. PETITIONER'S EXHIBIT "2", pp. 30-31.
The evidence presented at the hearing revealed the following facts which fail to support the petitioners claim of prejudice. On July 15, the petitioner confessed to Detectives Biroscak and Krusinski that he had in fact shot the victim, Deno Ingram.PETITIONER'S EXHIBIT "3", pp. 3-6. The detectives' reports indicate that the petitioner told the detectives that he had used a .22 caliber rifle to shoot the victim. While the reports also indicate that the petitioner stated that he didn't intend to kill the victim, a jury can infer the presence of intent — as Judge Ford explained to the petitioner at his change of plea canvass — through the presence, operation and shooting of a gun which is a dangerous and deadly weapon. State v. Tomasko, 238 Conn. 253,259, 681 A.2d 922 (1996) ("`one who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. . . . State v. Holley, 174 Conn. 22, 26,381 A.2d 539 (1977).' (Internal quotation marks omitted.) State v.Stanley, 223 Conn. 674, 680, 613 A.2d 788 (1992).").[15] In this case, the evidence indicates that the victim was shot at close range in the chest. PETITIONER'S EXHIBIT "2", p. 21;PETITIONER'S EXHIBIT "6", pp. 1-2; PETITIONER'S EXHIBIT "10", pp. 1-2. There was additional evidence that the defendant attempted to reload the gun after he fired, but instead chose to leave the scene. PETITIONER'S EXHIBIT "2". Furthermore, according to the reports, the petitioner also told the detectives that he shot the victim because the victim had, along with others, pistol-whipped him on a previous occasion. Though the petitioner subsequently claimed at his change of plea canvass to not know the victim, a jury could have inferred from his earlier statement that he did in fact know the victim and he had a motive for shooting him. While motive is not an element of the crime, it is circumstantial evidence of intent that the jury may consider. State v. Santos,41 Conn. App. 361, 370, 677 A.2d 1374 (1996) Given these circumstances it is very likely that a jury would have inferred that the petitioner had the intent to kill the victim and would have found him guilty of murder, not manslaughter.
As was previously mentioned, a petitioner in a habeas corpus action carries the burden of proving that he is entitled to relief. Biggs v. Warden, supra, 26 Conn. App. 55. The petitioner in this case has claimed that he suffered prejudice as a result of Attorney Ganim inadequately informing him about the option of CT Page 11619 manslaughter as a lesser included offense at trial. In order to establish this claim of prejudice, the petitioner must produce credible evidence at the habeas hearing that at the time of the shooting he lacked the intent to commit murder and that this defense would have likely succeeded at trial had he chosen to go to trial. The court finds it very telling that outside of the petitioner's own declarations, which certainly could be characterized as self serving, the petitioner failed to produce any evidence at the habeas hearing in support of his claim that he had not intended to kill the victim. The petitioner could have presented testimony from any of the eyewitnesses who were in the car with him on the night of the shooting. The defendant, himself could have testified to his state of mind when he shot the gun at the victim. However, the petitioner did neither. Thus, the facts as presented by the state, coupled with the lack of any evidence produced at the habeas hearing concerning the defendant's state of mind or eyewitness reports, are insufficient to satisfy the petitioner's burden in this habeas proceeding.
In light of a likely conviction for murder and the fact that the petitioner would have been exposed to sixty years imprisonment for such a conviction, this court finds that the petitioner had much to gain by pleading guilty and little to gain by going to trial. North Carolina v. Alford, 400 U.S. 25, 37,91 S.Ct. 160, 27 L.Ed.2d 162 (1970). According to Attorney Ganim, the state refused to consider a plea to manslaughter; HABEASTRANSCRIPT, p. 11; so the only way in which the petitioner could have been convicted and sentenced pursuant to manslaughter was by going to trial. However, there is little or no likelihood that the petitioner's defense — "I shot him, but I didn't mean to kill him" — would have succeeded at trial. Attorney Ganim legitimately recommended a plea bargain to limit the petitioner's exposure, and it is highly unlikely, given the facts of this case, that the petitioner would have chosen to go to trial and risk being convicted of murder and sentenced to sixty years. Thus the petitioner has failed show that he suffered sufficient prejudice as a result of his counsel's deficient performance.
For all of the aforementioned reasons, Joe Singletary's petitioner for a writ of habeas corpus is dismissed.
By the Court,
Zarella, J. CT Page 11620