RADCLIFFE RAYNOR *v.* COMMISSIONER
OF CORRECTION
(AC 29544)

Flynn, C. J., and DiPentima and Borden, Js.

Argued September 3—officially released November 3, 2009

*Sarah F. Summons*, special public defender, for the appellant (petitioner).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Erik T. Lohr*, former assistant state's attorney, for the appellee (respondent).

*Opinion*

BORDEN, J. The petitioner, Radcliffe Raynor, appeals, following a grant of certification to appeal by the habeas court, from the judgment of the court denying his petition for a writ of habeas corpus in which he claimed ineffective assistance of trial counsel in his criminal trial. The petitioner claims that the court improperly concluded that his trial counsel was not ineffective in (1) failing properly to prepare for and to investigate prior to trial and (2) failing to recall a certain witness in the criminal trial. We conclude that the first claim is not properly before us and that the court properly rejected the second claim. Accordingly, we affirm the judgment of the habeas court.

The petitioner was convicted, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),

and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2). He was sentenced by the trial court to a total effective term of fifteen years imprisonment. On direct appeal, this court affirmed the judgment of conviction. *State* v. *Raynor*, 84 Conn. App. 749, 854 A.2d 1133, cert. denied, 271 Conn. 935, 861 A.2d 511 (2004). Thereafter, the petitioner brought this petition, which the habeas court after an evidentiary hearing, denied. This appeal followed.

On the direct appeal, this court summarized the facts underlying the petitioner's conviction as follows. "In November, 1999, the thirteen year old victim[1] resided with her mother in an apartment in Hartford. The victim and her mother regularly attended a church located next door to their apartment. One night in November, the victim's mother left the apartment to attend a meeting at the church, leaving the victim alone. On her way to the church office, the victim's mother encountered the [petitioner], a relative, who asked to use the telephone in the apartment. After initially denying the [petitioner's] request to use the telephone, the victim's mother asked the victim to open the door to the apartment for the [petitioner]. The [petitioner] indicated to the victim's mother that he would stay with the victim until she returned from the church meeting. The victim's mother told the [petitioner] that that would be good and that she would return in about one and one-half hours.

"After opening the door to the apartment for the [petitioner], the victim went to her room to watch television while the [petitioner] used the telephone in the living room. After the [petitioner] finished using the telephone, he entered the victim's bedroom. The [petitioner] began to speak to the victim about his wife. As

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

he did so, the [petitioner] stood toward the end of the victim's bed as she was lying on it. After speaking with the victim about his wife, the [petitioner] asked the victim to give him a hug. The victim then stood up from her bed and hugged the [petitioner]. She sat down on the edge of her bed. The [petitioner] asked the victim to hug him again and the victim complied, although this time, she described the hug as 'uncomfortable' because she could feel the [petitioner's] 'private part.' The [petitioner] pushed the victim down on her bed. While holding both of the victim's hands with one of his hands, the [petitioner] pulled down the victim's pajamas and underwear. As the victim screamed and told him to stop, the [petitioner] used his legs to open the victim's legs and inserted his penis inside her vagina. After the [petitioner] removed his penis from the victim's vagina, the victim could see 'white stuff' coming out of his penis onto the carpet and the bed. The [petitioner] went into the bathroom and subsequently left the apartment.

"The victim subsequently went to the bathroom and noticed that, at a time when she was not having her period, blood was coming from her vagina. The victim put on a sanitary pad and went back to her room. Before the victim's mother returned home from church, the [petitioner] called to apologize and to tell the victim that she should not tell her mother what had happened because his life was in her hands, that it would cause a big problem for the family and that no one would believe her. When the victim's mother did arrive home from church, the victim was still in her room. The victim's mother came into the victim's room and inquired why the victim had not responded to her when she called her from the living room. The victim's mother noticed a sanitary pad wrapper in the bathroom. The victim's mother asked the victim why, after the victim had had her menstrual period two weeks earlier, she again seemed to 'be on her period.' The victim did not

relate to her mother at that time the incident that had just occurred with the [petitioner] and instead responded that she had been 'playing' with herself.

"The victim did not tell anyone of the incident with the [petitioner] until sometime after Christmas in late December, 1999, or early January, 2000. At that time, the victim told her cousin that she needed to go to a doctor because she thought something was wrong with her. The victim then disclosed to her cousin [S] that the [petitioner] had raped her. The victim's cousin told her mother, the victim's maternal aunt, who then told the victim's mother that the [petitioner] had raped the victim.

"After learning that the victim had been sexually assaulted, the victim's mother took her to the emergency room at Saint Francis Hospital and Medical Center in Hartford. There, the victim was given a medical examination, and the incident between the victim and the [petitioner] was reported to the police. The victim subsequently was interviewed by a specialist working primarily with child victims of sexual abuse. That interview was observed by Steven DiBella, a sergeant with the Hartford police department's detective division. During the interview, the victim described the incident that occurred between her and the [petitioner] the previous November. After further investigation and interviews, DiBella arrested the [petitioner] on June 21, 2000." Id., 750–53.

Among the claims raised on direct appeal, all of which this court rejected, were claims that the trial court improperly had admitted certain evidence of prior misconduct by the petitioner. That evidence consisted of the following.

D, a thirteen year old female friend of the victim, testified that on one occasion when she called the victim's apartment, the petitioner answered the telephone

and, instead of giving the telephone to the victim, asked D her name and age. When D asked whether the victim was there, the petitioner said that she had the wrong number. D ended the call and called back; the victim answered the telephone and told D that the petitioner had answered the telephone. D also testified regarding another occasion when she was on the front porch of the victim's house and the petitioner approached in a car. The petitioner yelled to her and asked her how old she was. When she responded that she was too young for him, he answered that she was not too young for him.

The victim and her mother also testified about an incident involving another female friend of the victim. They witnessed the petitioner holding onto the friend while she attempted to repel the petitioner.

J, another thirteen year old female friend of the victim, testified that when she and the victim were in the seventh grade, they accompanied the petitioner to a Sears, Roebuck and Company store to retrieve a car belonging to the victim's mother. While she was alone in the car with the petitioner, he asked her whether she had a boyfriend and whether she was a virgin, and asked to perform oral sex on her. The petitioner told her that she "had a nice body for being very young," and that he was going to have sex with K, another thirteen year old girl whom she knew. (Internal quotation marks omitted.) Id., 755. J testified further that the petitioner began to touch her on her chest and tried to put his hand between her legs, stopping only after she slapped his hand away.

Finally, DiBella, the investigating officer on the case, testified, in response to a question by the petitioner on cross-examination and a further question by the state on redirect examination, that S, the victim's cousin, had told him that the petitioner had a "thing for young girls."

(Internal quotation marks omitted.) Id., 754. Immediately after DiBella's testimony, the court characterized the testimony to the jury as "sort of thirdhand . . . statements made about the misconduct on the part of the [petitioner] involving other persons," which the jury could consider only on the issues of intent and motive. (Internal quotation marks omitted.) Id.

In its final instructions, the court instructed the jury that it could consider the testimony of D, of the victim and her mother regarding the petitioner's conduct with the victim's female friend, and the testimony of J only on the issues of the petitioner's intent and motive, and for no other purpose. The court did not refer to DiBella's testimony in those instructions.

In his amended petition for a writ of habeas corpus, the petitioner presented two counts. In the first count, he alleged that his trial counsel was ineffective in that she failed to prepare adequately for trial by failing to locate and to subpoena certain defense witnesses, failed to present favorable evidence by failing to rebut DiBella's testimony regarding the testimony of S that the petitioner had an interest in young girls, improperly opened the door to DiBella's testimony, failed to rebut certain medical evidence regarding the victim and failed properly to preserve certain issues for appellate review. In the second count, the petitioner claimed that he was actually innocent of the crimes of which he was convicted.

At the hearing on the petition, the petitioner testified and also presented the testimony of his girlfriend, Bobbette Cassanova, and of S. The petitioner denied engaging in any sexual misconduct with any of the prior misconduct witnesses and denied engaging in sex with the victim. Cassanova testified that she had told the petitioner's trial counsel that S denied having told DiBella that the petitioner had an interest in young girls. S

testified that she had not told DiBella that the petitioner was interested in young girls. Neither the petitioner nor the respondent, the commissioner of correction, called trial counsel as a witness, although she was available. The respondent did not call any witnesses. In his post-hearing brief, the petitioner made only two claims: (1) that his trial counsel's performance was ineffective because she had not recalled S to rebut DiBella's testimony that S had told him that the petitioner had a "thing for young girls"; (internal quotation marks omitted) id.; and (2) that the respondent's failure to call trial counsel as a witness should cause the court to draw an adverse inference against the respondent and to infer, therefore, that her testimony would have been unfavorable to the respondent.

In its memorandum of decision, the court first found that, with regard to the petitioner's second count, he had not established his actual innocence. With regard to the petitioner's first count, namely, ineffective assistance of trial counsel, the court found it unnecessary to consider the adequacy of counsel's performance because the petitioner "has failed to undermine this court's confidence in the outcome of the underlying trial and has, therefore, not proven that he was in any way prejudiced by his counsel's performance." In this connection, the court noted that with respect to the petitioner's claim that his trial counsel was ineffective by failing to recall S, "[t]here was ample evidence presented during the trial that the petitioner 'had a thing for young girls' that was considered by the jury, as instructed by the court, for purposes of motive and intent."

As the court aptly noted, for a petitioner to prevail on a claim of ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), he must establish both that counsel's representation fell below an objective

standard of reasonableness and that counsel's deficient performance prejudiced the defense. The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Valentin* v. *Commissioner of Correction*, 94 Conn. App. 751, 755, 895 A.2d 242 (2006). Accordingly, the court denied the petition because the petitioner had failed to prevail under the second prong of *Strickland*.

Although on appeal the petitioner claims that his counsel was ineffective in (1) failing to prepare for and to investigate prior to trial and (2) failing to recall S to rebut DiBella's testimony that she had told him that the petitioner had a "thing for young girls"; (internal quotation marks omitted.) *State* v. *Raynor*, supra, 84 Conn. App. 754; we conclude that the only claim properly before us is the second of these two claims. That is the only claim that he made to the habeas court in his posttrial brief that relates to the court's determination of a lack of prejudice, which was the determining factor in the court's decision.[2] The petitioner's failure to brief his first claim to the habeas court, namely, improper preparation and investigation by trial counsel, resulted in an abandonment of that claim. "[R]eviewing courts are not required to review issues that have been improperly presented to th[e] court through an inadequate brief. . . . Analysis, rather than mere abstract

[2] The claim in the petitioner's posttrial brief that the court should draw an inference adverse to the respondent because of the respondent's failure to call the petitioner's trial counsel would, even if meritorious, relate only to the adequacy of counsel's performance. It would have no relevance to the court's critical determination regarding the lack of prejudice. Thus, there was no need for the court to address that claim.

assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without discussion or citation of authorities, it is deemed to be abandoned. . . . *These same principles apply to claims raised in the trial court.* . . . *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 120, 830 A.2d 1121 (2003)." (Emphasis in original; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction,* 89 Conn. App. 850, 869, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005); see also *Collins* v. *Goldberg,* 28 Conn. App. 733, 738, 611 A.2d 938 (1992) (failure to brief certain claims set forth in complaint constituted abandonment of claims in trial court). Thus, it is entirely understandable and proper that with respect to the claim of ineffective assistance of counsel, trial counsel's failure to recall S for rebuttal purposes is the only claim that the habeas court addressed, and, therefore, the only claim that is properly before us on appeal.[3]

We turn, therefore, to the propriety of the determination of the court that the petitioner failed to show prejudice from his trial counsel's failure to recall S to rebut DiBella's testimony that S had told him that the petitioner had a "thing for young girls." (Internal quotation marks omitted.) *State* v. *Raynor,* supra, 84 Conn. App. 754. We agree with the court that the petitioner has failed to satisfy the second prong of *Strickland.*

First, there was more than ample evidence from the other prior misconduct evidence witnesses, namely, the

---

[3] In this connection, we note that the petitioner does not challenge on appeal the court's rejection of his claim of actual innocence. Furthermore, to the extent that he appears to raise other claims on appeal, namely, ineffective assistance of his habeas counsel and erroneous admission of the prior misconduct evidence at the criminal trial, those claims clearly are beyond the proper province of the habeas petition.

victim, her mother, D and J, from which the jury could have inferred that the petitioner had a strong interest in young girls. DiBella's testimony was merely cumulative of that other evidence. Consequently, S's testimony that she did not tell DiBella that the petitioner had a "thing for young girls"; (internal quotation marks omitted) id.; which the petitioner complains should have been adduced by his trial counsel, would only have rebutted evidence that was cumulative of other evidence that was left unrebutted. Second, that other evidence was much more direct and persuasive than DiBella's testimony, which the trial court characterized for the jury as "sort of thirdhand" testimony; (internal quotation marks omitted) id.; and to which the trial court did not even refer in its final jury instructions. S's testimony would not have rebutted much more persuasive evidence to the same effect and was by its nature of only marginal weight as compared to that other evidence. We conclude, therefore, that the evidence on which the petitioner relies is not the kind of evidence that probably would have led to a different result and that undermines our confidence in the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.