******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

TALIB SHAHEER *v.* COMMISSIONER
OF CORRECTION*

Superior Court, Judicial District of Tolland

File No. CV-17-4009009-S

Memorandum filed October 21, 2019

*Proceedings*

Memorandum of decision on petition for writ of habeas corpus. *Petition denied.*

*Robert J. McKay*, assigned counsel, for the petitioner.

*Leah Hawley* and *Tamara Grosso*, assistant state's attorneys, for the respondent.

*Opinion*

SEELEY, J. The petitioner, Talib Shaheer, brings this petition for a writ of habeas corpus claiming that his trial counsel provided him ineffective assistance in violation of the state and federal constitutions. The petitioner is seeking to have his convictions vacated and the matter be returned to the trial court for further proceedings.

Based on the credible evidence presented and for the reasons stated, the petition is denied.

I

PROCEDURAL HISTORY

The petitioner was a criminal defendant in the matter of *State* v. *Shaheer*, Docket No. CR-13-0670827-T, in the judicial district of Hartford. He was charged in a nine count information with the following offenses: felony murder in violation of General Statutes § 53a-54c, kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), two counts of tampering with physical evidence in violation of General Statutes (Rev. to 2013) § 53a-155 (a) (1), hindering prosecution in the second degree in violation of General Statutes § 53a-166, false statement in the second degree in violation of General Statutes (Rev. to 2013) § 53a-157b, interfering with police in violation of General Statutes § 53a-167a and tampering with a witness in violation of General Statutes § 53a-151. Attorney Bruce Lorenzen represented the petitioner in the criminal proceedings.

On April 16, 2015, the state filed a substitute information, and the petitioner pleaded guilty pursuant to the *Alford* doctrine to robbery in the second degree in violation of General Statutes § 53a-135 (a) (1) (B) and he pleaded guilty to tampering with evidence in violation of General Statutes § 53a-155 (a) (1). The state summarized the underlying facts at the change of plea hearing as follows: "Your Honor, the [petitioner] went to buy marijuana from the victim, Christopher Jefferson, on September 5, 2013, on Bond Street in the city of Hartford. He invited the female codefendant, Madelyne Martinez-Mercado, along for the ride. They had just met the day before. He drove the Mercedes that his girlfriend, Lourdes Tones, had rented for him to the location. Upon arrival, the victim was told to get in the backseat of the car. At this time, the [petitioner] pulled a gun from . . . under his seat, the driver seat, pointed it at the victim with the intent of robbing him. The [petitioner] claims that it was the female codefendant who pulled the gun and pointed it at the victim. The [petitioner] then took off, causing the car doors to lock. The victim tried to get out of the car . . . but he also tried to pound on the glass to signal his friends that he was being kidnapped. He then grabbed . . . hold of the

[petitioner], but then [the] petitioner yelled for the codefendant to take the gun, which she did. She put it to the victim's head and shot him. They then drove to Portland, Connecticut, to dump the body, stopping for gas along the way in Cromwell. The [petitioner] removed the victim's body from the car in Portland and dumped it in the woods . . . . He then drove to a car wash in Hamden where they cleaned the blood out of the car. He then drove to a dumpster in a housing project . . . in Hamden and disposed of the gun in a book bag that he had in the car. The gun was never recovered. . . . A passerby found the victim's body in Portland a very short time after it was dumped and called the police. The victim died the next day as a result of the gunshot wound at Hartford Hospital."

On June 16, 2015, the court, *Alexander*, *J.*, sentenced the petitioner to a total effective sentence of fifteen years to serve. Thereafter, on or about August 9, 2017, the petitioner filed a petition for a writ of habeas corpus. After counsel was appointed, the petition was amended several times. The operative pleading is the second revised petition dated February 4, 2019, and filed on February 13, 2019, which alleges he was denied the effective assistance of trial counsel in violation of his state and federal constitutional rights. Specifically, he claims the performance of his trial counsel was deficient in numerous ways, namely, failing to investigate certain witnesses, failing to timely raise a defense of duress, failing to provide critical information and/or correct information to the petitioner, and failing to review the strengths and weaknesses of the state's evidence.[1]

The court heard the trial on this matter on February 27, 2019. The petitioner called five witnesses: himself, Attorney Bruce Lorenzen (trial counsel), Attorney John Stawicki (cocounsel), Andrew W. Meisler, PhD (an expert witness who examined the petitioner and supported the petitioner's general defense of duress), and Jamal Pilgrim (a lay witness). The petitioner also introduced numerous exhibits, including a copy of the certified clerk's file, transcripts of the change of plea hearing and sentencing hearing, various witness statements and police reports, and an evaluation prepared by Dr. Meisler. The respondent did not call any witnesses or introduce any exhibits.

II

FINDINGS OF FACT

The court has reviewed all of the evidence presented and makes the following findings of fact:

The petitioner's trial counsel in the criminal case was Lorenzen, an experienced criminal defense attorney who graduated law school in 1984. He has served as a public defender exclusively since 1989.[2] In 2013, as the public defender for the judicial district of Hartford, he

was a supervisor, and he assigned himself to represent the petitioner. During his representation, he obtained discovery, including the police reports, witness statements, the arrest warrant affidavit, the petitioner's statement to the police, the 9-1-1 call to the police, and the search warrant affidavits. Attorney Lorenzen met with the petitioner numerous times and reviewed the discovery with him. He also interviewed and counseled the petitioner, discussed the state's evidence with the petitioner, pursued a general defense of duress by hiring a psychologist to conduct an evaluation, and engaged in pretrial negotiations with the prosecutor. Attorney Lorenzen received an offer from the state that was discussed with the petitioner and subsequently rejected by the petitioner. Based on the discovery provided and the information provided to him by the petitioner, Attorney Lorenzen had formulated a trial strategy, which he discussed with the petitioner, and he was prepared to try the case before a jury.

Both the petitioner and his codefendant, Martinez-Mercado, spoke with law enforcement and made certain admissions in sworn statements. In a statement dated December 17, 2013, Martinez-Mercado admitted that she drove with the petitioner in his vehicle to Hartford to buy drugs. She claimed that the petitioner had given her the gun to hold and, after the dealer got into the backseat of the vehicle, the petitioner drove off and the car doors locked. She stated that the petitioner and the dealer began arguing and she shot the victim in the head. She indicated that the petitioner drove on the highway and got off in a town where the petitioner found a quiet area and then pulled the victim out of the car. She further claimed that the petitioner went through the victim's pockets and took money and marijuana. She admitted to going to the car wash and cleaning the car with the petitioner. She also indicated that the petitioner placed the gun into a bag and then threw the bag into a dumpster near an apartment complex.

The petitioner also provided a statement to the police on December 17, 2013. He admitted that he drove to Hartford with the codefendant in order to buy marijuana from someone she knew. He told the police that, when they arrived at a location on Bond Street in Hartford, the dealer got into the backseat of the car. According to the petitioner, they were discussing the drug transaction when his codefendant pulled out a gun from her purse, pointed the gun at the drug dealer and told him she wanted everything. The petitioner drove off, the doors locked, and the drug dealer began grabbing at the petitioner. The petitioner claimed that his codefendant shot the drug dealer. He told the police that he wanted to bring the drug dealer to the hospital, but his codefendant refused to do so. Instead, he claimed that she pointed the gun at the petitioner, so he continued to drive. He stated that, when he stopped for gas in Cromwell, his codefendant went into the store and paid for

the gas, and that she pumped the gas. He further stated that he knew the victim was alive because he could hear him snoring.

The petitioner told the police that, when he found a wooded area in Portland, he pulled the victim from the car, who was still alive, and dumped him on the side of the road. Prior to doing so, the petitioner claimed that his codefendant went through the victim's pockets and took the marijuana and $500 in cash. According to the petitioner, his codefendant gave him the marijuana and $150 in cash. The petitioner stated that he drove to a car wash in Hamden where they cleaned the blood from the interior of the car, and then he drove to a condominium complex where the codefendant threw a bag containing the gun into a dumpster.

Initially, Patricia Jennings, a friend of the petitioner, provided an alibi for him. She gave a sworn statement to the police on September 6, 2013, and claimed that the petitioner was with her at her house during the time period that the shooting incident occurred. After the police obtained cell phone records of the petitioner and Jennings that contradicted her claim that the petitioner was present with her at her house all day, Jennings was charged with the offense of giving a false statement. On December 8, 2013, after she was arrested,[3] Jennings recanted her prior statement. She told the police that the petitioner stopped by her house during the morning of September 5, 2013, but that he left later in the morning and he was not with her all day. In his statement to the police, the petitioner admitted that he had called Jennings and told her to tell the police he was with her on the day of the shooting. Attorney Lorenzen was aware of both statements provided by Jennings and that she had recanted the alibi.[4] Lorenzen did not interview Jennings since his theory of defense was not based on the petitioner having an alibi but, rather, it was based on the version of events provided by the petitioner to the police.

On February 25, 2015, Martinez-Mercado entered a plea of guilty pursuant to the *Alford* doctrine to the charge of murder. In the recitation of the factual basis for the plea, the prosecutor stated that, after the victim got into the backseat of the car that was being driven by the petitioner, Martinez-Mercado, who was sitting in the front passenger seat, "pulled a gun and told the victim to give her all his stuff." According to the prosecutor, the victim began to struggle with the petitioner, and Martinez-Mercado then shot the victim. Martinez-Mercado was sentenced to a period of thirty-five years of incarceration.

On March 31, 2015, the first day of jury selection in the petitioner's case, the state filed a long form information, which informed the petitioner that the state was proceeding to trial on nine counts, including the charge of felony murder.[5] The defense theory that was going to

be presented to the jury, and communicated to the petitioner, was that the petitioner was unaware that his codefendant was going to rob the victim, and he was not aware that she had a gun. The petitioner intended to explain that his conduct following the shooting was the result of being under duress.[6] In other words, it was the shock of seeing the codefendant shoot the victim and then point the gun at the petitioner that caused him to cooperate with her after the shooting.[7] Attorney Lorenzen engaged the services of Andrew W. Meisler, PhD, who conducted an evaluation of the petitioner and issued a report on February 17, 2015. Dr. Meisler interviewed the petitioner, and he reviewed the police reports and statements relating to the shooting, as well as the police videotaped interviews of the petitioner and the codefendant. Dr. Meisler also reviewed the petitioner's Department of Correction medical records. Dr. Meisler concluded that the petitioner's actions "can be explained and understood as an acute and adaptive response to danger rather than as behavior driven by criminologic intent." He further concluded that the petitioner's "actions during and after the offense occurred during a state of altered consciousness and behavioral control resulting from a self-protective response to acute fear."

The defense provided Dr. Meisler's report to the state in the week prior to jury selection. The state filed an objection and argued that it was not disclosed in a timely manner. The trial court (*Mullarkey, J.*) indicated that it would give the state time to have the petitioner evaluated by the state's expert witness, Dr. Donald R. Grayson, which was then scheduled for April 16, 2015, the date the petitioner elected to enter his pleas of guilty to the substitute information.[8] During the petitioner's guilty plea canvass, Attorney Lorenzen asked the court to confirm that the petitioner understood that the defense had intended to present a defense of duress but that, by entering his pleas of guilty, he would be waiving his right to present the defense. The court (*Alexander, J.*) asked the petitioner if Attorney Lorenzen's representation was correct, and he responded that it was correct.

During jury selection, Attorney Lorenzen together with Attorney Stawicki, met with the petitioner at Northern Correctional Institution on several occasions during the evening hours. At those meetings, Attorney Lorenzen discussed with the petitioner his options. He gave strong advice to the petitioner to plead guilty to the lesser offenses and receive a sentence of fifteen years rather than proceed to trial and be exposed to a conviction for the offense of felony murder, and risk the mandatory minimum of twenty-five years to serve with a maximum of sixty years on that charge alone. Attorney Lorenzen was concerned about the increased exposure, as well as whether a jury would credit the petitioner's claims that he did not know anything about

robbing the victim with a gun, and that his postshooting actions (i.e., dumping the body in a wooded area, cleaning the blood from the car, throwing the gun away, asking Jennings to concoct an alibi) were as a result of being in shock from his codefendant's actions. Additionally, trial counsel discussed with the petitioner that there was an issue relating to telephone calls between the petitioner and other individuals. The telephone records received by the petitioner's trial counsel did not support the petitioner's version of what had transpired.[9]

Pilgrim was an acquaintance of the petitioner who was interviewed by the police on February 27, 2014, after his telephone number showed up on the petitioner's phone records on the day of the shooting. Pilgrim told the police that, in late August, 2013, he was hanging out with the petitioner and Jennings at his house on Bond Street in Hartford. The petitioner wanted to buy marijuana, so Pilgrim called Jefferson and arranged for them to meet. Pilgrim told the police that, after the petitioner and Jennings came back from meeting Jefferson to purchase marijuana, the petitioner was furious because Jefferson had charged them for an extra bag. Pilgrim told the police that the petitioner stated he should rob Jefferson for his stash of marijuana.

Attorney Lorenzen contacted Pilgrim and asked him questions. Pilgrim, who was on parole, indicated to Lorenzen that he was going through his own issues, and it was not the right time for him to get involved. Pilgrim also was contacted by a representative of the state, and Pilgrim told the state he did not want to testify. During jury selection, Attorney Lorenzen informed the petitioner that Pilgrim had contacted the defense, and he was not going to take the witness stand at the petitioner's trial.

Prior to the conclusion of jury selection, the petitioner elected to plead guilty to a substitute information to the charges of robbery in the second degree and tampering with physical evidence on April 16, 2015. The court (*Alexander, J.*) conducted a thorough and complete canvass of the petitioner. The court explained the elements of each statute and summarized the evidence the state claimed provided the factual basis for each charge. The petitioner indicated that he understood the elements of both offenses as well as the evidence that formed the basis for each charge. The petitioner also confirmed that he had talked to his attorneys about his decision to enter a plea agreement rather than continue with the trial. Subsequently, on June 16, 2015, the court (*Alexander, J.*) sentenced the petitioner to a period of ten years of incarceration on the robbery in the second degree charge and to a period of five years of incarceration on the tampering with physical evidence charge for a total effective sentence of fifteen years to serve.

III

DISCUSSION

As recognized by the United States Supreme Court, "the [s]ixth [a]mendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland* v. *Washington*, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The court also recognized that, "if the right to counsel guaranteed by the [c]onstitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann* v. *Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). Therefore, "defendants facing felony charges are entitled to the effective assistance of competent counsel"; id.; and that includes in the context of counsel advising a defendant whether to plead guilty. See *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The decision to plead guilty is "ordinarily the most important single decision in any criminal case." (Internal quotation marks omitted.) *Boria* v. *Keane*, 99 F.3d 492, 496–97 (2d Cir. 1996), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997).

The legal principles in cases involving claims of ineffective assistance of counsel in connection with guilty pleas are governed by *Strickland* v. *Washington*, supra, 466 U.S. 668, and *Hill* v. *Lockhart*, supra, 474 U.S. 52. Under *Strickland*, an ineffective assistance of counsel claim "must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018); see also *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 11, 188 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019). Furthermore, "[t]he [long-standing] test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (Internal quotation marks omitted.) *Hill* v. *Lockhart*, supra, 56. As noted in *Strickland*, "[u]nless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* v. *Washington*, supra, 687.

Our courts have recognized that, "[t]o satisfy the performance prong under *Strickland-Hill*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A peti-

tioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 704–705.

Although the decision to plead guilty is the defendant's to make, counsel "must make an informed evaluation of the options and determine which alternative will offer the defendant the most favorable outcome. A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 154, 662 A.2d 718 (1995); *Siemon* v. *Stoughton*, 184 Conn. 547, 556 n.3, 440 A.2d 210 (1981). "It is [well settled] that defense counsel have a constitutional duty to convey any plea offers from the government and to advise their clients on the crucial decision whether to accept a plea offer." (Internal quotation marks omitted.) *Cardoza* v. *Rock*, 731 F.3d 169, 178 (2d Cir. 2013); *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 797, 93 A.3d 165 (2014). It is the duty of a criminal defense lawyer to fully advise his client whether pleading guilty "appears to be desirable"; (emphasis omitted; internal quotation marks omitted) *Boria* v. *Keane*, supra, 99 F.3d 496; *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 437, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011); and "determine which alternative will offer the defendant the most favorable outcome." *Copas* v. *Commissioner of Correction*, supra, 154. Thus, the effective assistance of counsel includes counsel's informed opinion as to what pleas should enter. *Boria* v. *Keane*, supra, 497.

As noted in *Strickland*, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Strickland* v. *Washington*, supra, 466 U.S. 697. The sixth amendment "does not guarantee perfect representation, only a reasonably competent attorney. . . . Representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial." (Citations omitted; internal quotation marks omitted.) *Harrington* v. *Richter*, 562 U.S. 86, 110, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); see also *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 30–31.

A trial of a habeas petition is not an opportunity for a

new counsel to attempt to relitigate a case in a different manner. The court in *Strickland* cautioned that, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 466 U.S. 689; *Skakel* v. *Commissioner of Correction*, supra, 329 Conn. 31.

In the context of guilty pleas, "[t]o satisfy the prejudice prong [under *Strickland-Hill*], the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 705. As recently recognized by the Appellate Court, "an allegation of the ineffective assistance of counsel is a factor to be taken into consideration in determining whether a guilty plea was voluntary and intelligent, but for the plea and the judgment of conviction based thereon to be overturned on this ground, it must be demonstrated that there was such an interrelationship between the ineffective assistance of counsel and the plea that it can be said the plea was not voluntary and intelligent because of the ineffective assistance." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 797–98, 189 A.3d 135, cert. denied, 329 Conn. 911, 186 A.3d 707 (2018).

With respect to the prejudice prong, a petitioner "must make more than a bare allegation that he would have pleaded differently and gone to trial . . . ." (Internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018). "In evaluating whether the petitioner had met this burden and evaluating the credibility of the petitioner's assertions that he would have gone to trial, it [is] appropriate for the court to consider whether a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 280, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017). As noted in *Strickland*, "[u]nless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* v. *Washington*, supra, 466 U.S. 687.

First, the petitioner's claim that trial counsel's performance was deficient because he failed to timely raise a defense of duress[10] and did not timely disclose Dr.

Meisler as an expert witness is without merit. Although the state objected to the disclosure and moved to exclude Dr. Meisler's testimony due to late disclosure, the record reveals that the trial judge was not going to preclude Dr. Meisler's testimony due to the timing of disclosure. The petitioner was present in the courtroom when the trial judge stated he would permit time for the state to engage its own expert to examine the petitioner. In fact, the petitioner was scheduled to meet with the state's expert on the date he changed his plea to guilty. Therefore, to the extent the petitioner is asserting a claim that he pleaded guilty because he felt his duress defense was not going to be presented to the jury due to late disclosure, his claim is not credible. Trial counsel disclosed Dr. Meisler's report to the state prior to jury selection and was prepared to call him as a witness to support the petitioner's claim that he acted under duress after he witnessed his codefendant shoot the victim and then point the gun at him.[11] Accordingly, trial counsel's performance in securing an expert witness to support his defense that he was acting under duress after the shooting occurred does not support a claim of deficient performance.

Secondly, the petitioner's claims that trial counsel's performance was deficient because he failed to obtain Jennings' second statement and he did not investigate her also is without merit. Jennings did not give a second written statement. Instead, she was interviewed by the police, and her recantation is memorialized in a police report. Both trial counsel were aware of her recantation of the petitioner's alibi, and the court does not find credible that the petitioner was not aware that she had recanted. Regardless, the petitioner admitted to the police that he had asked her to lie for him and tell the police that he was with her on the day of the shooting. Therefore, based on the petitioner's admission to the police, it was sound trial strategy for trial counsel not to investigate Jennings and, instead, pursue an alternative theory of defense based on the petitioner's version of events.

While "[c]onstitutionally adequate assistance of counsel includes competent pretrial investigation"; *Siemon* v. *Stoughton*, supra, 184 Conn. 554; "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012). In *Gaines*, the court recognized the following: "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

"The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the [petitioner] and on information supplied by the [petitioner]. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigations may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." (Internal quotation marks omitted.) Id., 680–81.

In this case, based on the information supplied by the petitioner to Attorney Lorenzen as well as the petitioner's statement to the police, Lorenzen's decision to not investigate Jennings is sound legal strategy based on reasonable professional judgment. The defense strategy was to pursue a claim of actual innocence as to the robbery and felony murder, and then to argue that the petitioner was under duress after witnessing his codefendant shoot the victim. Jennings' original statement providing the petitioner with an alibi, and her later recantation, would not have been helpful to the petitioner's theory of the case. Furthermore, this court "will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case . . . or . . . the petitioner fails to present, at the habeas hearing, evidence or the testimony of witnesses that he argues counsel reasonably should have discovered during the pretrial investigation." (Footnotes omitted.) Id., 681–82. In the present case, Jennings' testimony would have been potentially harmful to the defense, and the petitioner did not present any relevant evidence counsel should have uncovered with further investigation. Therefore, the petitioner has not presented any credible evidence that trial counsel's decision to not investigate Jennings constituted deficient performance.

Similarly, while the petitioner alleged that trial counsel failed to investigate additional witnesses, namely, Pilgrim, Donraj Chandrat and Sheila Robinson, the petitioner did not offer any evidence that trial counsel did not conduct an investigation of these witnesses. Trial counsel was not asked whether he ever investigated these witnesses. See, e.g., *Romero* v. *Commissioner of Correction*, 112 Conn. App. 305, 312, 962 A.2d 894 (petitioner failed to present evidence that would allow

habeas court to determine whether counsel's pretrial investigation was inadequate), cert. denied, 290 Conn. 921, 966 A.2d 236 (2009). The only witness who testified at the habeas trial was Pilgrim. Pilgrim spoke with Attorney Lorenzen, but he told him he could not get involved since he had his own issues. Thus, trial counsel did contact Pilgrim, and the petitioner has not established that trial counsel did not investigate Pilgrim or that any investigation conducted was inadequate. Furthermore, the petitioner admitted that he knew at the time he entered his guilty pleas that Pilgrim had called his attorney's office and stated that he was not going to testify at the petitioner's trial. This admission defeats the petitioner's allegation that Attorney Lorenzen failed to inform the petitioner whether Pilgrim intended to testify.

The court also rejects the petitioner's claim that trial counsel misrepresented to the petitioner that the state possessed evidence that he made a five minute telephone call shortly after the incident to Jennings, which would have undermined his defense of duress. According to the petitioner, this misrepresentation contributed to his decision to plead guilty. He further testified that, after he pleaded guilty, trial counsel informed him he had been incorrect, and there was no five minute telephone call. The court did not find the petitioner's testimony on this subject to be credible, and the petitioner did not offer any additional evidence regarding this claim. Furthermore, the petitioner testified that he told Attorney Lorenzen he called Jennings to tell her he could not make it back to care for his dogs that he kept at her house. Therefore, regardless of whether the telephone call lasted ten seconds or five minutes, Attorney Lorenzen's advice to the petitioner that a jury could view the fact that he was able to have the presence to think about his dogs and make a telephone call at all as contrary to being under duress was reasonable.

Finally, the credible evidence does not support the petitioner's allegations that Attorney Lorenzen failed to communicate the strengths and weaknesses of the state's case or that he failed to discuss the potential testimony of all anticipated witnesses. Attorney Lorenzen met with the petitioner to develop a strategy. There were numerous pretrial conferences between the petitioner and trial counsel as well as several conferences during jury selection. Attorney Lorenzen provided the discovery to the petitioner and discussed with the petitioner his options. He recommended to the petitioner that he should plead guilty to the lesser offenses and receive a sentence of fifteen years rather than proceed to trial and risk being convicted for the offense of felony murder and then being exposed to the mandatory minimum of twenty-five years to serve with a maximum of sixty years on that charge alone.

The petitioner has not established that his trial coun-

sel's advice to plead guilty was not within the range of competence demanded of attorneys in criminal cases. The petitioner did not establish that counsel's representation fell below an objective standard of reasonableness such that the petitioner was unable to make an informed decision to plead guilty.

## IV

## CONCLUSION

For the foregoing reasons, the court denies the claims of ineffective assistance of counsel, and judgment shall enter denying the petition for a writ of habeas corpus.

* Affirmed. *Shaheer* v. *Commissioner of Correction*, 207 Conn. App. 449,  A.3d  (2021).

[1] While the petitioner detailed numerous allegations against trial counsel in the operative petition, the court will address only those claims for which the petitioner presented evidence and provided a legal analysis in his post-trial brief. All other claims are deemed abandoned. See *Walker* v. *Commissioner of Correction*, 176 Conn. App. 843, 857, 171 A.3d 525 (2017) ("[i]n light of the petitioner's failure to brief the due process claim, we conclude that the habeas court properly deemed it abandoned"); *Raynor* v. *Commissioner of Correction*, 117 Conn. App. 788, 796, 981 A.2d 517 (2009) ("[t]he petitioner's failure to brief his first claim to the habeas court, namely, improper preparation and investigation by trial counsel, resulted in an abandonment of that claim"), cert. denied, 294 Conn. 926, 986 A.2d 1053 (2010).

[2] Attorney Stawicki, another experienced public defender who has tried over 100 murder cases, served as cocounsel with Attorney Lorenzen during jury selection and the change of plea proceedings. The petitioner's habeas petition alleges ineffective assistance of counsel only as to Attorney Lorenzen.

[3] Jennings pleaded guilty to the offense of giving a false statement in the second degree in violation of § 53a-157b on May 29, 2014.

[4] Attorney Stawicki also recalled that Jennings had provided two versions and that her second statement was inconsistent with her initial statement. The petitioner testified that he never saw or received a copy of Jennings' second statement in which she recanted the alibi she originally provided to the petitioner. He also testified that he was never aware of it. The court does not find credible the petitioner's testimony that he was not aware that Jennings had recanted her original statement.

[5] When the petitioner was arrested, he initially was charged with kidnapping in the first degree in violation of § 53a-92 (a) (2) (B), felony murder in violation of § 53a-54c, robbery in the first degree in violation of § 53a-134 (a) (1), criminal use of a firearm in violation of General Statutes § 53a-216c and criminal possession of a firearm in violation of General Statutes § 53a-217c (a) (1).

[6] General Statutes § 53a-14 provides in relevant part: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was coerced by the use or threatened imminent use of physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist. . . ." As recognized by the Supreme Court, "[i]t is well established that . . . § 53a-14 provides that duress is a defense to a crime." (Internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 771, 120 A.3d 481 (2015). However, "[d]uress is not an affirmative defense. . . . Thus, if that defense is raised at a trial, the state shall have the burden of disproving [it] beyond a reasonable doubt. General Statutes § 53a-12 (a). [T]he assertion and proof of the . . . defense nevertheless remains the defendant's responsibility in the first instance." (Citation omitted; internal quotation marks omitted.) Id.

[7] See, e.g., *State* v. *Helmedach*, 306 Conn. 61, 79, 48 A.3d 664 (2012) (discussing defendant's theory in that case that her sole defense as to robbery and felony murder charges was that state had failed to prove that she had planned robbery with codefendant, while her duress defense related only to acts that she admitted committing *after* her codefendant threatened to kill her, namely, stealing victim's car and absconding with codefendant).

[8] During the change of plea hearing, the state informed the court that the petitioner was scheduled to be interviewed by the state's doctor later

that day.

[9] The petitioner testified that Attorney Lorenzen persuaded him to plead guilty because he was aware that Jennings had met with the prosecutor during jury selection, and Lorenzen told the petitioner the phone records showed that there was a five minute conversation between him and Jennings just after the shooting. According to the petitioner, Lorenzen told him that such a lengthy conversation would go against his defense of duress. The petitioner further testified that, after he pleaded guilty, Lorenzen then told him he had been mistaken, and the phone records did not show a five minute conversation. The court credits that Lorenzen counseled the petitioner that a jury could determine that the phone call between him and Jennings shortly after the incident undermined his defense of duress. However, the court does not credit the petitioner's claim that Lorenzen provided the petitioner with misinformation regarding the length of the telephone call.

[10] The petitioner does not provide any authority for the proposition that a defendant must provide notice to the state that he is asserting a defense of duress.

[11] In the operative petition, the petitioner alleges that "counsel misrepresented that he intended to have Dr. Meisler testify at the jury trial in regard to the evaluation of the petitioner to support the defense of duress . . . ." The petitioner presented no credible evidence in support of this assertion, and credits Attorney Lorenzen's testimony that, if the case had gone to trial, he intended to call Dr. Meisler in support of his defense theory. Lorenzen's testimony is supported by the prosecutor's statement to the court during the first day of jury selection: "[The defense is raising the defense of duress to some of the charges and claim, I guess, of actual innocence with regard to the others."

_____